53 N.J. 391 (1969)
251 A.2d 115
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM BOTT AND ROBERT LENOIR, DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued December 5, 1968.
Decided March 4, 1969.
*393 Mr. James A. Major argued the cause for appellants (Messrs. Major & Major, attorneys).
Mr. Richard F. Aronsohn, Special Assistant Prosecutor of Bergen County, argued the cause for respondent (Mr. Guy W. Calissi, Prosecutor of Bergen County, attorney).
The opinion of the court was delivered by FRANCIS, J.
The Bergen County Grand Jury charged by indictment that on or about August 9, 1966 defendant Bott "unlawfully and feloniously did receive and have in his possession one 1966 Cadillac Coupe DeVille, Serial No. J6224738, valued at $6,900, the property of Theodore Unger before then feloniously stolen, taken and carried away, * * * knowing the same to have been feloniously stolen, taken and carried away contrary to the provisions of N.J.S. 2A:139-1 * * *."
The Grand Jury by separate indictment made the same charge against the defendant Lenoir, namely that he received a Cadillac Sedan, Serial No. N6173081, valued at $5,200, knowing it to have been stolen, contrary to N.J.S. 2A:139-1.
The defendants denied their guilt and stood trial, Lenoir on April 24, 1968 and Bott on April 29, 1968. In neither case was the jury able to reach a verdict. Thereafter, before retrial, defendants moved to dismiss the indictments on two grounds: (1) N.J.S. 2A:139-1 is unconstitutional because violative of the Fifth Amendment of the United States Constitution, and (2) the offense of receiving a stolen automobile is a crime by reason of N.J.S. 2A:139-3; it is indictable as such only under N.J.S. 2A:139-3 and not under N.J.S. 2A:139-1. The trial court denied the motion and we granted defendants' application for leave to appeal.
*394 The constitutional issue was rejected in State v. DiRienzo, 53 N.J. 360 (1969), filed today, and requires no further discussion. We therefore turn to the second ground of attack on the indictments. For reasons to be stated the crime of receiving a stolen automobile knowing it to have been stolen is a separate and distinct offense from that covered by the general receiving stolen goods statute, N.J.S. 2A:139-1, and is indictable only under 2A:139-3 which deals specifically with such an act.
N.J.S. 2A:139-1 under which defendants were indicted says:
"Any person who receives or buys any goods or chattels * * * stolen from any other person * * * whether the property was received or bought from the thief * * * or from another person * * * is guilty of a high misdemeanor.
Possession of such property within 1 year from the date of such stealing * * * shall be deemed sufficient evidence to authorize conviction, unless the accused show to the satisfaction of the jury either * * *"
(a) that the property was a gift and not received from a minor under age 16, (b) that the amount he paid represented fair and reasonable value and the property was not received from a minor under age 16, (c) that when he bought he made certain described inquiries, (d) that when he received or bought the property he reported the transaction to the specified police authorities, and that the property was not received from a minor under 16 years of age, and (e) that before receiving or buying the property from a minor under 16 years of age he first communicated with specified police authorities and obtained their approval.
The offense of receiving stolen goods appears in the Crimes Act of 1796, § 62, p. 219 (Paterson's Rev. 1800). It was there provided in general terms that any person who shall receive or buy any goods or chattels that have been stolen "knowing the same to have been stolen * * * shall be deemed guilty of a high misdemeanor * * *." (Emphasis ours.). And see, § 72, p. 279 (1847 Rev.)
*395 In 1863 the Crimes Act was supplemented to prohibit a particular type of larceny and receiving. Chapter 53, L. 1863, made it a misdemeanor for any person to steal, rip, cut or break, with intent to steal any glass or woodwork belonging to any building, or any lead, iron, brass, copper, or any other metal etc. fixed in any building or in any private land, or for a fence to a dwelling house, or in any street or place dedicated to public use or ornament. L. 1863, c. 53, § 1, p. 71. Under subsection 3 thereof the receiving or buying of any "such article" knowing it to have been stolen was constituted a misdemeanor. It is fair to assume that the Legislature wished to treat that type of larceny and receiving as a distinct crime and punishable as a misdemeanor rather than a high misdemeanor under the broad language of the omnibus section 62 of the 1796 statute, and section 72 of the 1847 Revision. When the lawmakers adopted a general revision of the Crimes Act in 1874, the 1863 Act was continued therein as sections 142 and 143. See §§ 142, 143, p. 252 (1709-1877 Rev.).
This same 1874 Revision further demonstrates an awareness by the Legislature that it had established as separate offenses to be prosecuted as such, certain acts which, but for the individual treatment, would appear to be within the ambit of existing general statutes. Chapter 45, L. 1852 made it a high misdemeanor to receive or buy any stolen bank bill or note, bill of exchange, order, check, draft, bond or promissory note for the payment of money, or any certificate of stock or other security for the payment of money, or any other evidence of debt, knowing it to have been stolen. L. 1852, c. 45, § 1, pp. 87-88. This Act followed the decision of the Supreme Court in State v. Calvin, 22 N.J.L. 207 (Sup. Ct. 1849) holding that bank notes are not "goods or chattels" and therefore the receiver of stolen bank notes was not subject to indictment under section 72 of the 1847 Revision. The 1874 Revision integrated this Act into the omnibus receiving stolen goods section of the Crimes Act by adding to its language the words "or chose in action, or valuable thing *396 * * *." § 147, p. 253 (1709-1877 Rev.). Thus the Legislature combined Chapter 45, L. 1852 with the general prohibition against receiving stolen goods, and in the same revision, just four sections away in the format, retained Chapter 53, L. 1863 as section 143 thereof, continuing as a separate misdemeanor the offense of receiving stolen goods of the type described in the 1863 Act. See, State v. Rachman, 68 N.J.L. 120, 122 (Sup. Ct. 1902).
But in the 1898 Revision of the Crimes Act, Chapter 235 L. 1898, section 143 of the 1874 Revision was dropped as a separate offense and was integrated into the existing omnibus receiving stolen goods prohibition. It was included in section 166 thereof under which all types of receiving stolen goods offenses were downgraded from high misdemeanors to misdemeanors. L. 1898, c. 235, § 166, pp. 839-840. Except for section 183, L. 1898 and Chapter 255, L. 1903 and for some minor amendments added by Chapter 193, L. 1904 and Chapter 226, L. 1906, the description of the offense and the punishment prescribed were retained in the Compiled Statutes of 1910. 2 Comp. Stat. § 166, p. 1795 (1911). But the 1898 Crimes Act did add a separate and distinct receiving offense. Section 183 established as a misdemeanor the acquisition by purchase, gift, or receiving, of silk in finished or unfinished state (without obtaining consent of the employer) from a person employed in the manufacture or preparation of silk "knowing the same to be purloined or embezzled * * *." L. 1898, § 183, p. 844. This offense was continued as a distinct crime in the 1937 Revised Statutes, R.S. 2:164-2, and it exists in the same language at present as N.J.S. 2A:139-2.
It may be noted also that Chapter 255, L. 1903 created another separate receiving crime. Under this Act anyone purchasing from a minor under 16 years of age, jewelry, hardware, waste materials or other specified articles which may have been stolen, shall be guilty of a misdemeanor. L. 1903, c. 255, §§ 1, 4, p. 643. This enactment was retained *397 as a separate offense in the 1937 Revised Statutes, R.S. 2:164-4, and still exists as such today. N.J.S. 2A:139-4.
Chapter 187, L. 1928 amended section 166 of the 1898 Crimes Act Revision significantly. It dropped the language that had persisted since the 1796 Revision, which had described the offense as receiving stolen goods "knowing the same to have been stolen." The amendment provided that any person who shall receive or buy stolen goods "shall be guilty of a high misdemeanor" and that if such person is shown to have or have had possession of such goods within one year of the theft, "such possession shall be deemed sufficient evidence to authorize conviction" unless such person shall show to the satisfaction of the jury one of four specified methods of acquisition. L. 1928, c 187, § 1, p. 356. A further amendment, Chapter 348, L. 1938, brought the proscribed offense to the form presently appearing as N.J.S. 2A:139-1 by adding the provisions respecting the duty of the receiver when the goods are acquired from a person under 16 years of age. L. 1938, c. 348, pp. 875-876.
Our purpose in outlining the above statutory history is to demonstrate that New Jersey has had an omnibus receiving stolen goods act at least since 1796, and that the Legislature has been sensitive to its existence. The outline shows also that when the lawmakers felt that receiving stolen goods of a certain type presented a particular and perhaps current pressing evil, they made the act of doing so an individual misdemeanor or high misdemeanor by separate enactment. It reveals further that when the Legislature decided that a type of receiving stolen goods offense which had been given separate treatment ought to be drawn into the existing omnibus statute, it did so by simply adding a few words. Witness the drawing into the 1874 Crimes Act Revision (as mentioned above) of Chapter 45, L. 1852, relating to receiving stolen negotiable instruments etc., simply by adding a few words to the existing general statute. Note also by way of contrast, the continuance to the present day of the other separate enactments to which we have made reference.
*398 In 1921 it was a misdemeanor under the omnibus statute for any person to receive or buy any stolen goods, chattels or choses in action from any other person knowing them to have been stolen. L. 1898, c. 235, § 166, pp. 839-840. This language is broad enough to include knowingly receiving a stolen automobile. But in that year the Motor Traffic Commission recommended to the Legislature the enactment of a statute "making it a felony to steal a motor vehicle or to purchase a motor vehicle knowing the same to have been stolen." N.J. Motor Traffic Commission Report, p. 13 (1921). Such a bill was introduced bearing a statement saying:
"This bill is recommended by the Motor Traffic Commission and aims to abate the theft of automobiles and their purchase by some person or persons knowing the same to have been stolen."
Its title was "An Act to prevent the felonious taking and stealing of motor vehicles." It provided in pertinent part, that any person who shall steal a motor vehicle or receive or purchase a stolen motor vehicle knowing that it had been stolen "shall be guilty of a felony, and upon conviction thereof shall be sentenced to pay a fine not exceeding five thousand dollars, and to undergo imprisonment by separate or solitary confinement at labor not exceeding ten years." It was adopted as Chapter 186, L. 1921, at p. 503. The description of the offense and the punishment prescribed leave no doubt that the Legislature recognized it as a measure to combat a particular evil, and intended it to be administered separately from the omnibus receiving statute.
The Act was amended in 1934 but the legislative intention to have the offense treated as a distinct crime was not affected. L. 1934, c. 229, p. 532. Under the amendment the description of the offense as a "felony" was changed to a "high misdemeanor" and the punishment of fine and imprisonment became fine or imprisonment or both. The introducer's statement said the intention was to change the description of the offense from a "felony" to a "high misdemeanor *399 as there are no felonies under our system of criminal law." The 1937 Revised Statutes included the law as a separate section of the Crimes Act, R.S. 2:164-3, but excised therefrom the portion which treated stealing a motor vehicle as a separate high misdemeanor. Although the language of the omnibus larceny statute was broad enough to include theft of motor vehicles, L. 1898, c. 235, § 158, p. 837; R.S. 2:145-2, the revisers and the Legislature retained larceny of a motor vehicle in a separate section of the revision as a separate crime with its higher punishment by way of fine or imprisonment or both. R.S. 2:145-6 and compare R.S. 2:103-5. However, in enacting the 1952 Revision of the Crimes Act, the Legislature apparently decided that larceny of motor vehicles should be included in the omnibus larceny statute and that the lesser punishment provided there for a high misdemeanor was sufficient for the offense. Consequently the portion of Chapter 186, L. 1921 which was included in the 1937 revision as R.S. 2:145-6, was deleted, and larceny of motor vehicles is no longer specified as a distinct offense. N.J.S. 2A:119-2. But obviously the 1952 Legislature felt the same way as did its colleagues in 1937, i.e., that the crime of receiving stolen motor vehicles should continue to be treated as a separate offense and punished more severely than other criminal receivings. So it retained and perpetuated that part of Chapter 186, L. 1921 which had become R.S. 2:164-3 in 1937. That part became N.J.S. 2A:139-3 in the 1952 Revision, and it constitutes the present form of the offense.
The statutory history satisfies us that the Legislature has recognized and still recognizes a special evil associated with the receiving of stolen motor vehicles knowing them to be stolen. It demonstrates also that the lawmakers intended to establish it as a distinct offense, to require it to be prosecuted as such, and to be subject upon conviction therefor to greater maximum limits of punishment.
It is understandable that the lawmakers did not feel the need for including in N.J.S. 2A:139-3 the evidentiary *400 rules (set forth in N.J.S. 2A:139-1) relating to inferences of guilty knowledge to be drawn from possession of a stolen article within a year after the theft. They had already regulated strictly the method of transferring title to a motor vehicle registered or to be registered in this State. N.J.S.A. 39:10-1 et seq. And they had ordained expressly that the statute be construed "so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles" within this State. N.J.S.A. 39:10-3. Thus there was established as a matter of public policy a method of transfer of ownership of motor vehicles, differing from that required for other chattels. Consequently legal title can pass only by the documentary evidence executed in the prescribed manner. See, United States v. One 1939 Cadillac, T.P. Coupe, Etc., 36 F. Supp. 847 (D.N.J. 1941); C.A. Oesterman, Inc. v. King Auto Finance, 111 N.J.L. 119 (Sup. Ct. 1933); N.J.S.A. 39:10-5. Willful violation of any of its provisions constitutes a misdemeanor. N.J.S.A. 39:10-24. In addition to the prescribed title papers, every motor vehicle must bear manufacturer's identification numbers. N.J.S.A. 39:10-2, 7. These numbers are required to appear in the manufacturer's certificate of origin of each new vehicle. N.J.S.A. 39:10-8. In short, in view of the rigid regulation of the transfer of title of motor vehicles, the lack of a certificate of origin or ownership, or any suspicious discrepancy in such certificates of origin or ownership, or unusual circumstances surrounding the transaction by which ownership is alleged to have been acquired, would give rise quickly to an inference of inculpatory knowledge. Therefore, considering the ease with which such inference would arise, the Legislature undoubtedly decided it was unnecessary to facilitate the prosecution of cases of receiving stolen motor vehicles by including in N.J.S. 2A:139-3 the evidentiary rule concerning an inference of guilty knowledge from possession, within one year of the theft, which inference had been made part of the general statute, N.J.S. 2A:139-1.
*401 The provision in the general statute, N.J.S. 2A:139-1, for the inference of criminal knowledge from possession within the year period does not mean that proof of possession of stolen articles more than a year after the theft must result in a judgment of acquittal as a matter of law. The statute simply means that proof of possession within the year without more permits the inculpatory inference. That is not to say that possession more than a year later plus additional evidence, direct or circumstantial, of guilty knowledge will not establish a factual issue of criminal receiving for determination by a jury. The sense of these observations applies also to the criminal receiving of stolen motor vehicles under N.J.S. 2A:139-3. The history of the statute when considered with the strict regulation of the method of transferring title to such vehicles shows clearly that when possession occurs within a reasonable time after the theft, it is rational to infer the acquisition was accompanied by knowledge of such theft. The drawing of inferences from proven facts is the traditional function of courts. Legislation authorizing certain inferences may be helpful procedurally in some situations, superfluous or unnecessary in others. It is not essential for the courts in administering the statute condemning the criminal receiving of stolen motor vehicles to fix a time period within which an inference of guilty knowledge will be drawn from their possession. Having in mind the general legislative policy revealed by N.J.S. 2A:139-1, the motor vehicle statute N.J.S.A. 39:3-1 et seq. and particularly the requirement for annual registration of motor vehicles in this state, N.J.S.A. 39:3-4, in our view a permissive inference of guilty knowledge does no violence to empirical rationality when it is drawn solely from possession of a stolen motor vehicle within a year of the theft. Of course, if under all the circumstances of a case, a jury could not rationally draw such an inference, the trial judge must direct an acquittal. By our reference to the year period we do not mean to establish any arbitrary or outer time limit for recognition of the permissive inference. *402 As we have said our aim is to illustrate for trial court purposes that it can be reasonable in N.J.S. 2A:139-3 cases to recognize a permissive inference of guilty knowledge from possession within the period mentioned. See, People v. Moro, 23 N.Y.2d 496, 297 N.Y.S.2d 578, 245 N.E.2d 226 (1969).
In view of all the circumstances discussed, we believe the Legislature consciously and deliberately established the offense of receiving a stolen motor vehicle knowing it to be stolen, as a separate and distinct crime from N.J.S. 2A:139-1. The omnibus language of N.J.S. 2A:139-1, which on its face would seem to be broad enough to encompass receiving stolen automobiles, dates back at least to 1796, thus long antedating such vehicles. With the advent of automobiles in substantial numbers by 1921, and their unusual appeal as an object of theft, the Legislature by the clearest kind of implication withdrew the associated offense of knowingly receiving stolen vehicles from the almost unlimited scope of the ancient statute, and undertook to deal with it independently and punitively in a manner designed to deter its particular public evil. See, State v. Hotel Bar Foods, 18 N.J. 115, 128-129 (1955); Goff v. Hunt, 6 N.J. 600, 607 (1951). The maximum punishment that can be imposed for violation of the omnibus receiving statute is seven years imprisonment or a $2,000 fine or both. The maximum prescribed for violation of N.J.S. 2A:139-3 is ten years imprisonment or a $5,000 fine or both. Thus the legislative will could be frustrated by indicting an accused under N.J.S. 2A:139-1. Such an indictment would prevent imposition of the longer sentence provided under N.J.S. 2A:139-3. Accordingly, we hold the view that the charge of knowingly receiving a stolen motor vehicle must be prosecuted under the specific statute, N.J.S. 2A:139-3, and that an indictment under N.J.S. 2A:139-1 is technically objectionable. But, under R.R. 3:4-3(a) error in the citation of the statute or its omission in an indictment is not ground for dismissal or for reversal of a conviction if the error or *403 omission did not mislead the defendant to his prejudice. Amendment of the indictment in this instance to substitute N.J.S. 2A:139-3 for N.J.S. 2A:139-1 would not cause prejudice. Since the motion to dismiss was made in advance of retrial, there should be ample time to prepare for any implications of the change, if indeed there are any. It seems obvious in this case that the evidence presented to the Grand Jury would have been the same whether the indictment was sought under either statute, the proof at the trial will be the same, and the procedure followed with respect to the order of the proof will be the same. We do not see how the defendants could possibly be harmed by simply changing the reference to the statute allegedly violated. The prosecutor did not seek such an amendment when the motion to dismiss was argued below  probably because his position was sustained there. Under the circumstances the record is remanded to the County Court with direction to amend the indictment to recite N.J.S. 2A:139-3 as the statute allegedly violated instead of N.J.S. 2A:139-1. The cause may then proceed to trial.
Prosecutions already disposed of are not affected by our determination here. Persons already charged and convicted under N.J.S. 2A:139-1 cannot complain. They were exposed to less severe punishment than that set out in N.J.S. 2A:139-3, and for the reasons expressed above they suffered no prejudicial harm. Cf. State v. Block, 119 N.J.L. 277, 281 (Sup. Ct. 1938), affirmed 121 N.J.L. 73 (E. & A. 1938).
Remanded.
For remandment  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
Opposed  None.