107 N.J. Super. 545 (1969)
259 A.2d 491
HAROLD J. RUVOLDT, AND HAROLD J. RUVOLDT, JR., PLAINTIFFS,
v.
JAMES A. TUMULTY, JR., PROSECUTOR OF THE COUNTY OF HUDSON, ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND JOSEPH T. BRADY, SUPERINTENDENT OF ELECTIONS OF THE COUNTY OF HUDSON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 19, 1969.
*549 Mr. Harold J. Ruvoldt, Jr. for plaintiffs (Messrs. Ruvoldt & Ruvoldt, attorneys, pro se).
Mr. Gregory J. Castano, Assistant County Prosecutor, for defendant (Mr. James A. Tumulty, Jr., Hudson County Prosecutor, attorney pro se).
Mr. Arthur J. Sills, Attorney General of New Jersey, did not appear.
Mr. Joseph T. Brady, Superintendent of Elections of Hudson County, appeared pro se.
ARTASERSE, A.J.S.C.
This is the return date of an order to show cause why the prosecutor of Hudson County should not be enjoined from presenting to the Hudson County grand jury testimony and evidence of allegedly fraudulent challenge permits employed in the June 3, 1969 primary. The order further directs the prosecutor to show cause why he should not be superseded in this investigation by the Attorney General and why he ought not recognize Harold J. Ruvoldt, Jr. as associate counsel pursuant to N.J.S.A. 19:34-63 in any presentation to the grand jury.
The proceeding involves a number of novel legal issues which must be understood in the political context of Hudson County, 1969.
*550 On May 13, 1969 Jersey City underwent the initial phase of its mayoral election. Since no one received a majority, the two highest candidates, Thomas J. Whelan, backed by the county Democratic organization, and Thomas Gangemi vied in the June 17 runoff.
On June 3, 1969 the gubernatorial primary election in Hudson County to a large extent pitted the same forces against each other. This time the standard bearer for the organization was Senator William Kelly, while former Governor Robert B. Meyner drew the support of the Gangemi and other anti-administration forces.
It is alleged in the affidavit of Nicholas D'Agosto, acting clerk of the Hudson County Board of Elections, that on June 3, 1969 he discovered several fraudulent challenge permits in circulation. He notified the prosecutor, who immediately initiated an investigation and began issuing subpoenas to various persons to appear before the grand jury on the following Monday. It is admitted that over 70 persons were subpoenaed to appear before the grand jury prior to the institution of this action.
On June 5, 1969 plaintiffs Harold J. Ruvoldt and Harold J. Ruvoldt, Jr., two of the persons subpoenaed, who are also members of the bar of this State, filed a complaint in the Law Division of the Superior Court charging, among other things, that the prosecutor was illegally exercising powers delegated by the Legislature to the superintendent of elections and that he was using his office to influence the Jersey City runoff election in violation of plaintiffs' constitutional rights.
Plaintiffs sought an injunction against the prosecutor, his supersedure by the Attorney General, and his recognition of Harold J. Ruvoldt, Jr. as his associate counsel in any presentation of these matters to the grand jury.
This court issued a temporary restraint enjoining the prosecutor from presenting any testimony or compelling any witnesses to appear before the grand jury pending this return date. The prosecutor's motion to dissolve the restraint was denied on June 6, 1969. At the hearing upon that motion *551 the Attorney General intervened on behalf of the superintendent of elections as well as on behalf of all the people of the State to request that the restraint continue until this return date. The Attorney General argued that this would insure a free and unimpaired election without any possibility of intimidation. He further argued that the investigation was properly for the superintendent of elections, and not the prosecutor, to make. The court, therefore, directed that the superintendent and the Attorney General be made parties defendant. The court further directed that plaintiffs file an amended complaint amplifying their allegations of constitutional injury. The amended complaint was filed only yesterday, June 18, 1969.
Plaintiffs in their brief state that they seek relief both individually and as members of a class. The complaint makes no allegation that it is a class action. However, since this was the obvious, though inarticulated, intent, the court considers the pleadings amended as such, and treats the suit as a spurious class action. R.R. 4:36-1(c). There is some question whether this action should technically be considered a complaint in lieu of prerogative writs sounding in prohibition, or whether it is more correctly denominated as an equitable action. In view of our practice, and since the jurisdiction of this court includes both law and equity, this question is academic. In any event, it is accepted law that the court can enjoin a prosecutor who under color of his office acts beyond his authorized powers. Brex v. Smith, 104 N.J. Eq. 386 (Ch. 1929); Bantam Books, Inc. v. Melko, 25 N.J. Super. 292 (Ch. Div. 1953) modified 14 N.J. 524 (1954). While it is true that both these cases spoke of equity protecting property rights from an overzealous prosecutor, it cannot be gainsaid today that personal rights warrant at least as much protection in equity. The claim that the prosecutor was using his office to influence the Jersey City election has been mooted by the temporary restraint and the passage of that election into history. The complaint apparently implies a discriminatory application of the law by the prosecutor *552 to infringe or punish plaintiffs' exercise of political rights guaranteed under the First and Fourteenth Amendments to the United States Constitution. The main support for this charge appears to be the dragnet-type investigation upon which the prosecutor embarked with his wholesale subpoenas.
In view of the broad statutory immunity granted to such witnesses by N.J.S.A. 19:34-60, it is argued that the only purpose of such an inquisition is harassment. The leading case concerning the uneven administration of a law fair on its face is Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), where the court said:
* * * Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. [at 373, 374, 6 S.Ct. at 1073]
Yick Wo has never been applied in the context here sought in this State, and has rarely been applied elsewhere either as a defense to or prevention of criminal proceedings. See Comment, 61 Columbia L. Rev. 1103 (1961); Note, 59 Yale L.J. 354 (1950); Annotation "Penal Law  Discriminatory Enforcement", 4 A.L.R. 3rd 404 (1965). In any event, the allegations herein do not justify, and our ultimate disposition does not require, the development of such novel constitutional procedural protections at this stage of the proceedings.
The complaint prays for this court to supersede the prosecutor with the Attorney General pursuant to N.J.S.A. 52:17A-4(f). It is not clear whether a litigant is entitled to this relief. The power given to the assignment judge, the board of chosen freeholders and, to a more limited degree, to the Governor under this statute is a legislative delegation of authority to determine when and to what extent the "exclusive" prosecution of the criminal business in the county, N.J.S.A. 2A:158-4, shall be withdrawn from the prosecutor. *553 See Morss v. Forbes, 24 N.J. 341 (1957), for a comprehensive discussion of the development of the office of the prosecutor and its relationship to the Attorney General. It is doubtful if a litigant has any right to demand that the assignment judge exercise his power under this statute. On the other hand, it seems that one appropriate way by which the assignment judge may be alerted to the possible advisability of requesting the Attorney General to supersede the county prosecutor is through the medium of litigation. However, whether it is a justiciable demand or not, the exercise of this power is obviously discretionary with the assignment judge, and the assignment judge need not exercise that power now because the prosecutor has, at this time on oral argument, voluntarily consented that the Attorney General take over this investigation.
The crucial issue in this case is the legislative delineation of authority between the prosecutor and the superintendent of elections in counties of the first class. N.J.S.A. 19:32-6 provides: "The superintendent shall have power to issue subpoenas for the purpose of investigating any complaint of violation of the election laws of the state * * *" Although the prosecutor argues that this was only effective as to subpoena power, the language is unambiguous and is all-encompassing, and this court holds that the superintendent of elections has the right and the power and the duty of investigating any complaint of any violation of any election laws in the State.
N.J.S.A. 19:34-62 reads as follows:
If the prosecutor of the pleas of the county shall be notified of any violation of any of the provisions of this title, he shall forthwith diligently inquire into the facts, and if there is reasonable ground for instituting a prosecution, such prosecutor of the pleas shall present the charge, with all the evidence which he can procure, to the grand jury of the county. Nothing herein contained shall justify any such prosecutor in counties of the first class in exercising the powers conferred upon the superintendent of elections in such counties. [Emphasis added]
*554 Prior to the creation of the office of superintendent of elections, the prosecutor had subpoena power to investigate election law complaints. L. 1918, c. 210. In 1923 the Legislature took this power from the prosecutor in counties of the first class and vested it in the superintendent. L. 1923, c. 9. In 1930 the limitation on the prosecutor was spelled out by the Legislature in its enactment of N.J.S.A. 19:34-62, quoted above. Significantly, the report to the Legislature by the New Jersey Election Laws Revision Commission (1930) describes the office of the superintendent in these words: "It is the right arm of the election law. It is the constituted police power and detective bureau. On it is imposed the onus for honest elections * * *" (at 14)
It is clear that the Legislature intended that its duly established administrative expert in election matters, the superintendent, should have primary responsibility to investigate alleged violations of the election laws. After the superintendent concludes his investigation, he may, if he feels there is reasonable evidence to warrant criminal action, refer his report to the prosecutor for action before the grand jury.
The superintendent must faithfully carry out his investigative function or else face public prosecution under N.J.S.A. 19:34-48. The Legislature has made other similar divisions of investigative functions between the prosecutor and an administrative agency. Cf. N.J.S.A. 34:6-98.9 involving fatal mine accidents.
In this case the prosecutor, through an erroneous view of his jurisdiction, acted beyond his powers and by-passed the superintendent in contravention of N.J.S.A. 19:34-62. The subject matter of the investigation is clearly an election law violation within the ambit of the superintendent's investigative responsibilities. N.J.S.A. 19:34-6, loitering in polling place; N.J.S.A. 19:34-19, illegal insignia at polls; N.J.S.A. 19:34-20, soliciting, procuring or assisting violations of the election law. Cf. State v. Bott, *555 53 N.J. 391 (1969), concerning acts which fall both within a general and a more specific criminal statute.
Therefore, the court grants a permanent injunction against the prosecutor from proceeding with this matter until the superintendent shall have completed his investigation and referred the matter to him.
Since a complaint has been made by the clerk of the board of elections, albeit to the wrong official, the public interest requires that the superintendent undertake his investigation without awaiting a further notification. In this regard the superintendent can call upon the assistance of his statutory counsel, the Attorney General, to advise him on any legal aspects of the investigation or to assist him in the conduct of his examination of witnesses. The prosecutor should turn over to the superintendent any evidence or complaints that he has concerning these violations.
Plaintiffs also sought to have the court order the prosecutor to recognize Harold J. Ruvoldt, Jr. as his associate counsel, pursuant to N.J.S.A. 19:34-63, which reads as follows:
Any citizen may employ an attorney to assist the prosecutor of the pleas to perform his duties under this title, and such attorney shall be recognized by the prosecutor of the pleas and the court as associate counsel in the proceedings.
No prosecution, action or proceeding shall be dismissed without notice to, or against the objection of, such associate counsel until the reasons of the prosecutor of the pleas for such dismissal, together with the objections thereto of such associate counsel, shall have been filed in writing, argued by counsel and considered by the court, with such limitation as to the time of filing such reasons and objections as the court may impose.
In view of the injunction issued today, the court will not grant such an order since at this stage the prosecutor has no duty to perform until after the superintendent has acted. Furthermore, the court interprets the intent of the statute to be to guarantee a vigorous prosecution and prevent any attempts at a "whitewash" of the charges. Before ordering *556 the prosecutor to accept a citizen's nominee as associate counsel pursuant to this statute, the court would have to be convinced that the interest of the proposed associate counsel does not conflict with the intended prosecution.
An order should be submitted by counsel, consented to as to form or settled on notice, to the following effect: (1) judgment for plaintiffs on Count 1 quashing the subpoenas; (2) judgment for plaintiffs on count 3 granting injunction as set forth in this opinion; (3) judgment dismissing counts 2, 4, 5 and 6; (4) ordering the superintendent of elections to conduct an investigation as indicated in this opinion, and (5) without costs.