719 A.2d 722

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. GHADB EL MOGHRABI AND SULTAN M. ARAISHI, DEFENDANTS–RESPONDENTS.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ELI ASHUROV, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 20, 1998—Decided November 12, 1998.

Before Judges KEEFE, EICHEN, and COBURN.

*Simon Louis Rosenbach*, Assistant Prosecutor, argued the cause for appellant (*Glenn Berman*, Middlesex County Prosecutor, attorney; *Mr. Rosenbach*, of counsel and on the brief).

*Kevin C. Orr* argued the cause for respondent Sultan M. Araishi.

*Marc C. Gettis* argued the cause for respondents Ghadb El Moghrabi and Eli Ashurov and joins in the brief of respondent Araishi.

The opinion of the court was delivered by

COBURN, J.A.D.

In 1991, the Legislature enacted the New Jersey Anti–Piracy Act, *L.* 1991, *c.* 125, § 1; *N.J.S.A.* 2C:21–21. The question presented by these appeals, which we have consolidated for purposes of this opinion, is whether conduct falling within the proscriptions of that act can be prosecuted under the more general forgery provisions of Chapter 21 of the Criminal Code, either *N.J.S.A.* 2C:21–1, which relates to writings, or *N.J.S.A.* 2C:21–2, which relates to objects.

The Middlesex County Grand Jury indicted defendants Ghadb El Moghrabi and Sultan M. Araishi for offenses allegedly occurring on July 31, 1996. Count one of the indictment charges defendants with a violation of the Anti–Piracy Act in that they "knowingly did for commercial advantage or private financial gain

transport or possess with the intent to advertise, sell, resell, rent or transport eight-hundred (800) audiovisual works, the label, cover, box of which do not clearly and conspicuously disclose the true name and address of manufacture; contrary to the provisions of *N.J.S.A.* 2C:21–21c(4)." Count two charges attempted forgery in that they "did purposely attempt to purposely and knowingly utter a writing so that it purported to be the act of another who did not authorize the act; contrary to the provisions of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:21–1a(3)." The State concedes that count two is directed at precisely the same conduct as that described in count one. Count three charges a conspiracy to violate the Anti–Piracy Act. A similar two-count indictment was later returned against defendant Eli Ashurov. The only differences are that he is alleged to have violated the law on February 27, 1997, he did not act with another, and his violation involved 1,058 audiovisual works.

On defendants' motions, the trial court dismissed the second count of each indictment, primarily on the ground that the audiovisual works in question, video tapes of commercial movies, were not writings. We granted the State leave to appeal.[1]

We need not decide whether the trial court was correct in ruling that video tapes are not writings, as that term is defined in *N.J.S.A.* 2C:21–1, since if they are not writings they would be objects, the forgery of which is proscribed by *N.J.S.A.* 2C:21–2. Were it not for the existence of the Anti–Piracy Act, forgery of these video tapes could be prosecuted under one or the other of the general forgery statues, depending on whether the video tapes are writings or objects. However, we are satisfied that the

---

[1] The State's appeal was limited to the question whether the trial court erred in holding that a commercial video tape was not a writing. During oral argument, we raised the issue resolved by this opinion, and we offered the parties an opportunity to provide supplemental briefs. Counsel were familiar with the relevant authorities, such as *State v. Bott*, 53 *N.J.* 391, 251 *A.2d* 115 (1969), and chose to argue the issue without the necessity of supplying supplemental briefs.

Legislature deliberately established the offense of pirating recordings in *N.J.S.A.* 2C:21–21, the New Jersey Anti–Piracy Act, as a separate and distinct crime from either *N.J.S.A.* 2C:21–1 or –2.

Our conclusion with respect to the legislative will is drawn from a comparison of the severe punishments in the Anti–Piracy Act with the far lesser punishments of the general forgery sections of Chapter 21. In that regard we note that in the circumstances of this case a conviction under either *N.J.S.A.* 2C:21–1 or –2 would be a fourth-degree offense with a maximum fine of $7,500.[2] On the other hand, a conviction under *N.J.S.A.* 2C:21–21 would be a third-degree offense for which the fine applicable to more than sixty-five audiovisual works is $250,000. An indictment under either of the general forgery statutes would prevent imposition of the longer sentence and far higher fine provided by the Anti–Piracy Act. To permit count two to stand in this case, or to be amended to allege a violation of *N.J.S.A.* 2C:21–2, would run the risk of frustrating the clearly and definitively expressed legislative will. Accordingly, we hold that an offense coming within the purview of the Anti–Piracy Act may not be prosecuted under the general forgery sections of Chapter 21 of the Criminal Code.

Our conclusion is buttressed by the following statement attached to the bill which resulted in the Anti–Piracy Act:

This substitute repeals the existing law concerning the unlawful making or distribution of sound recordings without the consent of the owner and shall be known as the "New Jersey Anti–Piracy Act." Due to technological advances, those statutes no longer afford adequate protection to sound recordings and latter developed recording media. Production costs have decreased markedly making illegal sound and audiovisual recordings within the reach of more persons by virtue of the decreased production costs and the new technologies available. This bill repeals the sections of law which are currently found in Title 2A and restructures and adds these provisions to the criminal code. The bill does the following:

1. Requires that recordings distributed in New Jersey display the name and address of the manufacturer for "truth in labeling" purposes. See paragraph (4) of subsection c.

---

[2] Effective August 1, 1997, the maximum fine for a fourth-degree offense was raised to $10,000. *L.* 1997, *c.* 181, § 12. *N.J.S.A.* 2C:43–3b(2).

2. Includes newly developed recording media as videocassettes within the reach of the provisions. See the definition of "audiovisual work".

3. Establishes criminal penalties, including fines which may be based on the amount of unlawful trade in which the defendant engaged. These fines are significantly higher than those which may be imposed for most crimes of the fourth or third degree where the stated maximum is $7500. These fines are similar to those imposed for drug offenses. The prior offenses set forth in Title 2A were "misdemeanors" which are treated as the equivalent of fourth degree crimes under the provisions of the criminal code. This substitute retains the crime of the fourth degree classification for those offenses where the actor is not dealing in larger numbers of illegally recorded devices but increases the financial penalties. In the other instances the crimes will be classified as crimes of the third degree with higher fines permitted.

The substitute does not apply to broadcasters or persons who record in their home for personal use without profit.

[Assembly Judiciary, Law and Pub. Safety Comm., Statement to Assembly No. 4232 (N.J. Feb. 21, 1991).]

In *State v. Bott*, 53 *N.J.* 391, 251 *A.*2d 115 (1969), the Supreme Court was confronted by an analogous problem under Title 2A: whether someone who had received a stolen motor vehicle could be prosecuted under the general receiving stolen goods statute or had to be prosecuted under the statute that specifically proscribed such conduct in relation to motor vehicles. The Court noted that punishment under the specific statute was more severe and observed that the "statutory history satisfies us that the Legislature has recognized and still recognizes a special evil associated with the receiving of stolen motor vehicles knowing them to be stolen." *Id.* at 399, 251 *A.*2d 115. The Court went on to hold that the legislative history "demonstrates also that the lawmakers intended to establish it as a distinct offense, to require it to be prosecuted as such, and to be subject upon conviction therefor to greater maximum limits of punishment." *Ibid.* Since the Legislature had "consciously and deliberately" established the more serious offense as a "distinct crime," the Court concluded that to permit prosecution under the general receiving statute would frustrate the legislative will. *Id.* at 402, 251 *A.*2d 115.

The circumstances in the instant case parallel those of *Bott*. The Legislature recognized the pirating of video tapes, and other similar materials, as constituting a special evil. As a result, the

Legislature established a distinct crime, higher in degree, and bearing financial penalties that dwarf those of the general forgery statutes. Clearly, the allowance of a prosecution for this offense of pirating under either *N.J.S.A.* 2C:21–1 or –2 would thwart the Legislature's will. Under *Bott*, we cannot countenance that result. *See also State v. Milligan,* 202 *N.J.Super.* 336, 495 *A.*2d 132 (App.Div.1985), *aff'd o.b.,* 104 *N.J.* 67, 514 *A.*2d 1316 (1986); *State v. Morse,* 109 *N.J.Super.* 160, 262 *A.*2d 715 (App.Div.1970).

Affirmed.