NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1104-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

EMILIO MCMAHON,

 Defendant-Appellant.

_________________________________

 Submitted January 25, 2017 – Decided March 29, 2017

 Before Judges Simonelli and Gooden Brown.

 On appeal from the Superior Court of New
 Jersey, Law Division, Atlantic County,
 Indictment No. 11-08-1930.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Monique Moyse, Designated
 Counsel, on the brief).

 Diane M. Ruberton, Acting Atlantic County
 Prosecutor, attorney for respondent (Mario C.
 Formica, Special Deputy Attorney General/
 Acting Chief Assistant Prosecutor, of counsel
 and on the brief).

PER CURIAM

 Defendant Emilio McMahon appeals from an October 16, 2015

order denying his petition for post-conviction relief (PCR)
without an evidentiary hearing. Having reviewed the record in

light of the applicable legal principles, we affirm.

 I.

 Defendant was indicted and charged with second-degree sexual

assault, N.J.S.A. 2C:14-2(c) (Count One); fourth-degree criminal

sexual contact, N.J.S.A. 2C:14-3(b) (Count Two); third-degree

endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (Count

Three); and fourth-degree child abuse, N.J.S.A. 9:6-3 (Count

Four). Pursuant to a negotiated plea agreement, defendant pled

guilty to count three. In return, the State agreed to dismiss the

remaining counts. In addition, the State recommended that

defendant serve 364 days in the county jail, and be subject to

parole supervision for life, N.J.S.A. 2C:43-6.4, and Megan's Law,

N.J.S.A. 2C:7-1 to -23.

 At the plea hearing, defendant admitted that on April 29,

2011, while he was a senior in high school, he engaged in "sexual

conduct" with a fourteen-year-old high school freshman who was

five years younger than he was. Specifically, defendant admitted

touching "her intimate parts[,]" which was "conduct that would

impair the morals of a child." On February 3, 2012, defendant was

sentenced in accordance with the plea agreement. Defendant did

not file a direct appeal.

 2 A-1104-15T2
 Thereafter, defendant filed a timely pro se petition for PCR

and was later assigned counsel who filed a supporting brief. In

his petition, defendant contended that his plea counsel was

ineffective for: (1) failing to file a Miranda1 motion to suppress

his statement made at the police station; and (2) failing to

adequately advise defendant, resulting in a guilty plea that did

not establish an adequate factual basis. Defendant also challenged

his conviction as unconstitutional based on the purported

deficient factual basis for his guilty plea and the disparate

penal consequences between the third-degree child endangerment

offense and the fourth-degree criminal sexual contact offense.

After oral argument, the PCR court denied defendant's claims

without conducting an evidentiary hearing.

 Applying Strickland v. Washington, 466 U.S. 668, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984), the court concluded that defendant

failed to establish that plea counsel's performance "was

inadequate" or that he was "prejudiced" by her performance.

Regarding plea counsel's failure to file a suppression motion, the

court expounded:

 Defendant's allegations that his
 confession was obtained by the police by way
 of trickery and false promises are not

1
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 3 A-1104-15T2
substantiated. The [c]ourt cannot take into
consideration the alleged promises in exchange
for the confession made by the police officers
and the alleged unrecorded conversations, as
[d]efendant's allegations are merely bald
assertions. [State v. Cummings, 321 N.J.
Super. 154, 170 (App. Div.), certif. denied,
162 N.J. 199 (1999)] dictates that in order
to establish a prima facie claim, a petitioner
must do more than make bald assertions that
he was denied the effective assistance of
counsel. . . . He must allege facts sufficient
to demonstrate counsel's alleged substandard
performance. . . . In fact, [d]efendant's bald
assertions . . . are not contained in his pro
se petition and were not established under
oath through an affidavit or certification.
The [d]efendant failed to demonstrate the
exact nature of "conversations and promises"
and did not articulate how they resulted in
"overbearing his will" in a manner that made
his confession involuntary.

 . . . .

Aside [from] the fact that [d]efendant failed
to provide any affidavits from witnesses of
alleged police misconduct, he also failed to
provide an affidavit based on his personal
knowledge as required by the rules. The
[c]ourt cannot rely on [d]efendant's unsworn
statements.

 It is true that the Miranda standard
[renders] inadmissible evidence that was
obtained through coercion, however, nothing
indicates that [d]efendant was coerced into
giving a confession. On the contrary, the
record demonstrates that [d]efendant was
properly Mirandized on the first day of the
interview and that he signed the form waiving
his rights. Additionally, [d]efendant
initially stated that he was ready to take the
polygraph test immediately but later changed
his mind and requested to speak with his aunt

 4 A-1104-15T2
first. It is demonstrated by the record that
he left the station after the initial
interview and voluntarily later returned for
the polygraph test where he was Mirandized
again and provided a full confession.

 Defendant has not previously alleged the
misconduct and is not able to demonstrate that
he was in fact coerced. Defendant's
allegations that he was interviewed off the
record and asked to join "Team America", has
surfaced for the first time four years after
the incident allegedly occurred. There is no
evidence that [d]efendant related his concerns
to his attorney during the original
proceedings or that the attorney refused or
neglected to file the motion to suppress an
allegedly illegally obtained statement.
Indeed, based upon the record before the
[c]ourt, the [d]efendant was advised of his
Miranda rights and voluntarily waived his
rights in writing resulting in a confession.

 Assuming, arguendo, as alleged by the
[d]efendant that police requested that
[d]efendant "join Team America", the [c]ourt
cannot determine that such a statement was
"coercive and manipulative". The
investigating officer permitted [d]efendant
to speak to his aunt after his first interview
only to call back the same day and volunteer
to return a week later to complete his
statement. Further, if a motion was filed and
[d]efendant's confession was suppressed there
was adequate evidence in the record from the
statement of a victim that seemingly would
have sustained [the] burden of proof.

 During oral argument, [d]efendant
addressed an issue, which was not previously
addressed in written submissions. Defendant
argued that the ineffective assistance claim
had a probability of success because the
initial conduct of the investigating officer
was in violation of [d]efendant's rights as

 5 A-1104-15T2
the officers illegally seized him at his
school during the initial investigation. It
is [d]efendant's position that an element of
coercion was present from the time when the
police first approached him. . . . Defendant
alleges that the officer's actions violated
[d]efendant's rights because upon the
officer's arrival to [d]efendant's high
school, the officer failed to advise
[d]efendant of the reason for the interview
and that [d]efendant had an option of not
entering the police vehicle and going to the
station.

 Defendant contends that he was not aware
of a reason for his detention and initial
interrogation. . . . Defendant argued that
because he was not advised that he had the
right not to go with the police and not to
answer any questions before he was taken to
the station, he was unlawfully seized and any
statements made by him are inadmissible.

 . . . .

 Even if [d]efendant was not properly
advised of the reason for the interview, the
statement provided a week later still stands.
No allegation has been made of improper
questioning during the ride to the station
. . . . At the station after [d]efendant was
Mirandized he did not give any incriminating
statements. Defendant initially denied all
of the accusations and even volunteered to
immediately take a polygraph test. Defendant
was permitted to leave the station and given
an opportunity to speak with his aunt. . . .
[d]efendant's request to speak with his aunt
did in fact constitute an invocation of his
rights and since his request was immediately
honored, his Fifth Amendment rights were not
violated.

 Defendant's statement that was acquired
a week later after he volunteered to return

 6 A-1104-15T2
 is not tainted even if the officers did not
 adhere to the proper procedures during the
 initial interview. Defendant's statement was
 too attenuated from the initial contact with
 police. He was not required to return and
 give any statements at all. Defendant's
 confession was not affected by the officer's
 alleged failure to advise him of the reasons
 for the investigation and the interview and
 his options of coming along or not prior to
 the initial interview.

 In rejecting defendant's contention that his plea counsel's

ineffectiveness resulted in a guilty plea with an inadequate

factual basis, the court explained:

 Defendant fails to demonstrate that the
 plea colloquy was deficient based on his
 failure to admit that his conduct was
 intentional. The offense charged did not
 require the mens rea of intent but rather
 knowledge and [d]efendant's conduct was so
 obviously of a sexual nature that knowledge
 is implied.

 The court in [State v. Bryant, 419 N.J.
 Super. 15 (App. Div. 2011)] held that the
 legislature enacted N.J.S.A. 2C:2-2(c)(3),
 commonly known as the "gap filler" statute,
 which provides that when no culpable mental
 state is specified in a criminal statute, the
 mental state of "knowingly" shall be deemed
 the required mental element.

 . . . .

 Pursuant to Bryant, the mens rea required for
 the charge of endangering the welfare of the
 child is knowledge not intent.

 . . . .

 7 A-1104-15T2
 The present case is factually very
 similar to Bryant. The gap filler statute
 applies to the [d]efendant as he was convicted
 under the statute that did not have a specific
 mens rea requirement. Defendant, therefore,
 did not have to admit that his conduct was
 intentional during the plea colloquy, mere
 knowledge suffices.

 There is no doubt that [d]efendant acted
 knowingly during the commission of the
 offense. In Bryant the court stated that some
 forms of sexual contact with a child, such as
 . . . touching the child's intimate parts, are
 by their nature, so obviously of a sexual
 nature that it would seem superfluous to
 require proof that the actor knew he was
 engaging in "sexual conduct" within the
 meaning of N.J.S.A. 2C:24-4(a). Almost by
 definition, one cannot engage in such conduct
 without recognition that it is sexual in
 nature. . . .

 Knowledge is implied to the [d]efendant's
 conduct in this case. There is no uncertainty
 regarding the [d]efendant's awareness that
 when he touched the victim's bare breasts
 . . . that the conduct was of an obviously
 sexual nature. The record also demonstrates
 that defendant was aware of the victim's young
 age. As a result, [d]efendant did not need
 to admit to intentional conduct during the
 plea hearing.

 The court also rejected defendant's argument that his

conviction was unconstitutional because he was prosecuted under

the generic child endangerment statute, rather than the specific

criminal sexual contact statute. Initially, the court determined

that defendant's claim was barred by Rule 3:22–4(a) because it

could have been raised in a direct appeal and there was "no good

 8 A-1104-15T2
reason . . . for [d]efendant's failure to assert this claim earlier

than four years after his conviction."2 Nonetheless, the court

rejected defendant's claim on the merits, reasoning:

 Defendant alleged that prosecution under the
 wrong statute resulted in a disproportionate
 punishment because the endangerment statute is
 a third[-]degree charge, which attaches
 Megan's law and life parole supervision, while
 the criminal sexual contact statute is [a]
 crime of a fourth[-]degree, which unlike the
 former does not result in life parole and
 Megan's law registry.

 . . . .

 Defendant relies on State v. El Moghrabi,
 316 N.J. Super. 139 (App. Div. 1998), where
 the court ruled that the legislature
 specifically designed a statute prohibiting a
 distinct offense thus prohibiting prosecution
 of that offense under a generic statute. The
 instant case, however, is not analogous to
 Moghrabi.

 . . . .

 In the present case, prosecution pursuant to
 the child endangerment statute does not
 frustrate the legislative will by any means.
 To the contrary, the statute is designed
 specifically to protect not only the physical
 wellbeing of the children from criminal

2
 Likewise, we note that defendant's contention that there was an
inadequate factual basis for his guilty plea was barred by Rule
3:22-4(a) as the argument could have been raised on direct appeal,
and the fact that defendant did not file a direct appeal does not
obviate the bar. A defendant "is generally barred from presenting
a claim on PCR that could have been raised . . . on direct appeal
. . . ." State v. Nash, 212 N.J. 518, 546 (2013) (citing R. 3:22-
4(a)). A PCR petition is not "a substitute for appeal." R. 3:22-
3.

 9 A-1104-15T2
contact but also to protect the psychological
health of children and prevent corruption of
their morals. Legislative intent here is
demonstrated by the requirement of the
additional element for the charge of
endangerment that is not required for the
charge of criminal sexual contact.

 . . . .

 While the criminal sexual contact charge
is satisfied in this case, the endangerment
statute cannot be considered a generic statute
as it requires an additional element, that the
conduct "debauches the morals of the child".
The breadth of the term sexual conduct is
balanced by the requirement that the state
show that the conduct would tend to debauch
the morals of the child. . . . An act that
would debauch the morals of the child is an
act that tends to impair morals; actual
impairment need not be shown. State v.
Hackett, 166 N.J. 66, 76 (2001). In this case,
defendant engaged in sexual contact with a
fourteen year-old girl. Defendant's conduct
in touching the victim's private parts . . .
falls directly under the category of the
conduct that would impair the morals of the
child. During the plea colloquy, the
[d]efendant admitted that his actions would
impair the morals of the child.

 Therefore, [d]efendant's conduct falls
under the conduct contemplated by the
legislature to be prohibited. Furthermore,
defendant's indictment consisted of four
counts, including . . . criminal sexual
contact . . . . Defendant, did, however,
accept the plea of child endangerment
admitting on the record that his conduct
impaired the morals of the victim.
Defendant's claim that he was prosecuted under
the generic statute, which resulted in
disparate punishment, is therefore meritless.

 10 A-1104-15T2
 This appeal followed. On appeal, defendant raises the same

arguments rejected by the PCR court for our consideration:

 POINT ONE

 MR. MCMAHON'S PLEA LACKED A FACTUAL BASIS AND
 THUS MUST BE VACATED.

 POINT TWO

 MR. MCMAHON'S PLEA VIOLATED THE WILL OF THE
 LEGISLATURE AND THUS MUST BE VACATED.

 POINT THREE

 MR. MCMAHON IS ENTITLED TO AN EVIDENTIARY
 HEARING ON HIS CLAIM THAT HIS ATTORNEY
 RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR
 ALLOWING HIM TO PLEAD GUILTY WITHOUT A FACTUAL
 BASIS AND FOR FAILING TO FILE A MOTION TO
 SUPPRESS.

 II.

 We review the PCR court's findings of fact under a clear

error standard, and conclusions of law under a de novo standard.

See State v. Harris, 181 N.J. 391, 420-21 (2004), cert. denied,

545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005). However,

where, as in this case, "no evidentiary hearing has been held, we

'may exercise de novo review over the factual inferences drawn

from the documentary record by the [PCR judge].'" State v. Reevey,

417 N.J. Super. 134, 146-47 (App. Div. 2010) (quoting Harris,

supra, 181 N.J. at 421), certif. denied, 206 N.J. 64 (2011).

 11 A-1104-15T2
 Defendant argues that "his attorney was ineffective for

allowing him to plead guilty without a factual basis and for

failing to file a motion to suppress [his statement]." According

to defendant, since he established "a prima facie case of

ineffective assistance of counsel[,]" the PCR court "should have

held an evidentiary hearing on his ineffectiveness claim" to allow

him to elicit testimony from plea counsel. We disagree and affirm

substantially for the reasons expressed in Judge Michael J. Blee's

cogent and comprehensive written opinion. We add only the

following comments.

 The mere raising of a claim for PCR does not entitle the

defendant to an evidentiary hearing. Cummings, supra, 321 N.J.

Super. at 170. Rather, trial courts should grant evidentiary

hearings only if the defendant has presented a prima facie claim

of ineffective assistance, material issues of disputed fact lie

outside the record, and resolution of the issues necessitate a

hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013).

"Rule 3:22-10 recognizes judicial discretion to conduct such

hearings." State v. Preciose, 129 N.J. 451, 462 (1992).

 A PCR court deciding whether to grant an evidentiary hearing

"should view the facts in the light most favorable to a defendant

to determine whether a defendant has established a prima facie

claim." Id. at 462-63. "To establish a prima facie claim of

 12 A-1104-15T2
ineffective assistance of counsel, a defendant must demonstrate

the reasonable likelihood of succeeding under the test set forth

in [Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L.

Ed. 2d at 698], and United States v. Cronic, 466 U.S. 648, 104 S.

Ct. 2039, 80 L. Ed. 2d 657 (1984), which [our Supreme Court]

adopted in State v. Fritz, 105 N.J. 42, 58 (1987)." Id. at 463.

 Under the Strickland standard, a petitioner must show

counsel's performance was both deficient and prejudicial. State

v. Martini, 160 N.J. 248, 264 (1999). The performance of counsel

is deficient if it falls "below an objective standard of

reasonableness" measured by "prevailing professional norms."

Strickland, supra, 466 U.S. at 687-88, 104 S. Ct. at 2064-65, 80

L. Ed. 2d at 693-94. In evaluating deficiency, counsel's

performance must be reviewed with "extreme deference . . .

requiring 'a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance[.]'"

Fritz, supra, 105 N.J. at 52 (quoting Strickland, supra, 466 U.S.

at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694).

 In the context of a PCR petition challenging a guilty plea

based on the ineffective assistance of plea counsel, the prejudice

prong is established when the defendant demonstrates a

"'reasonable probability that, but for counsel's errors, [the

defendant] would not have pled guilty and would have insisted on

 13 A-1104-15T2
going to trial.'" State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009)

(quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). However,

to obtain relief, a defendant "must convince the court that a

decision to reject the plea bargain would have been rational under

the circumstances." State v. O'Donnell, 435 N.J. Super. 351, 371

(App. Div. 2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 372,

130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284, 297 (2010)).

 A defendant claiming ineffective assistance of counsel based

on counsel's failure to file a suppression motion not only "'must

satisfy both parts of the Strickland test but also must prove that

his . . . [Fifth] Amendment claim is meritorious.'" State v.

Goodwin, 173 N.J. 583, 597 (2002) (quoting Kimmelman v. Morrison,

477 U.S. 365, 375, 106 S. Ct. 2574, 2583, 91 L.Ed. 2d 305, 319

(1986)). "It is not ineffective assistance of counsel for defense

counsel not to file a meritless motion . . . ." State v. O'Neal,

190 N.J. 601, 619 (2007).

 Applying these principles, we are persuaded that Judge Blee

properly declined to conduct an evidentiary hearing and properly

denied defendant's petition for PCR. Furthermore, Judge Blee

properly rejected as a matter of law defendant's meritless

"disparate punishment" and "plea colloquy deficiency claims."

 Affirmed.

 14 A-1104-15T2