Howard A. Zeller, J.
This article 78 proceeding brought on by the petition of James M. Johnson, as Mayor of the Village of Waverly, Tioga County, New York, seeks to compel George Boldman as Tioga County District Attorney to prosecute those crimes, offenses and violations of village ordinances cognizable by the Police Court of the Village of Waverly. No issue is presented concerning the duty of the District Attorney to prosecute in the Police Court violations of the Penal Law or the Vehicle and Traffic Law of the State of New York. He has done so and states that he intends to continue to do so. Fixing the task of prosecuting violations of ordinances and particularly of the speed ordinance of the village is the key issue presented.
The Mayor contends that the broad scope of the District Attorney’s duties defined by subdivision 1 of section 700 of the County Law requires him to direct, control and undertake the prosecution of such violations of village ordinances in his county as are in the nature of a criminal offense. The pertinent portion of the cited County Law states: “It shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed ”. The Mayor argues that speeding and other infractions of village traffic ordinances are crimes or offenses and are cognizable by a court of the county, to wit — the Waverly Police Justice Court. It is contended that, by thus being within the literal wording of the statute, the District Attorney must prosecute infractions of village traffic ordinances.
The District Attorney does not take issue with the Mayor’s contention that the Waverly Police Justice Court is a “ court of the county ’ ’ nor does he directly deny that a village traffic infraction is one of the ‘ 1 crimes and offenses cognizable by the courts of the county”. The District Attorney does controvert the Mayor’s interpretation that the word “ duty” as used in subdivision 1 of section 700 is a mandate requiring him to undertake the prosecution of alleged violations of village ordinances.
*594 It is this court’s opinion, for reasons hereafter stated, that, despite its common connotation of being a thing absolute, and inviolable, the word “ duty ” as used in subdivision 1 of section 700 of the County Law and as applicable to village ordinances is surrounded by permissive and nonabsolute implications, and is intended by the Legislature not so much to require action as to preserve the right to act when sound discretion dictates.
It has been a “ long-established and accepted procedure and practice of over a century ”, which “to-day has the force of law”, to have the prosecution of misdemeanors and offenses in the lower courts 11 conducted by local authorities, that is, by the police, State troopers, * * * town and village attorneys and corporation counsels.” (People v. Wyner, 207 Misc. 673, 675, 677; see, also, People v. Schildhaus, 4 N ¥ 2d 883; Matter of Turecamo Contr. Co., 260 App. Div. 253, motion for leave to appeal denied 259 App. Div. 1094; People v. Halbreich, 18 Misc 2d 473; People v. Montgomery, 7 Misc 2d 294; Matter of Coleman v. Lee, 1 Misc 2d 685.) And “ it is commonplace for the Magistrates to avail themselves of the services of counsel representing the complaining witnesses ” to prosecute cases in the lower courts. (People v. Scharer, 185 Misc. 616, 617.)
A cursory examination of annotated statutes shows that section 700 of the County Law has undergone several legislative reviews and revisions in the past 50 years without substantial revision of the phrase: “It shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county ’ ’. It is inconceivable that successive Legislatures were so unaware of the existing practices in the lower courts that when they used the word ‘ ‘ duty ’ ’ it was intended as a mandate to the District Attorney to conduct all prosecutions for crimes and offenses. It is equally inconceivable that these successive Legislatures all would ignore any real conflict between known actual practices and the true legislative intent behind the wording of the statute. As the court stated in People v. Black (156 Misc. 516, 519): “We do not believe that the Legislature of this State * * * intended that the heavy artillery of the offices of * * * the district attorney be wheeled into action ” “ every time a rabbit be snared or a frog speared after dark ”. The court went on to say at page 520 that ‘ ‘ district attorneys in rural counties, usually without assistance,, cannot be called upon to prosecute * * * petty cases ”.
A District Attorney is a quasi-judicial officer with wide latitude in the discretionary exercise of his duty to prosecute *595 crimes and offenses of a criminal nature provided there is an actual and reasonable exercise of discretion within the bounds of the office’s jurisdiction. (Matter of Coombs v. Edwards, 280 N. Y. 361; People v. Fielding, 158 N. Y. 542; Matter of Coleman v. Lee, 1 Misc 2d 685, supra.)
Examination of the problem confronting this respondent District Attorney conclusively demonstrates that the exercise of his discretion was wise in refusing to prosecute all village traffic ordinance violations.
Waverly is situated between Elmira and Binghamton on New York Route 17, which is a heavily travelled east-west through route in the Southern Tier. The village is also the northern terminal point of TJ. S. Routes 220 and 309 which serve the northern Susquehanna valley section of the State of Pennsylvania.
On a June 1 to May 31 fiscal year basis, the Waverly Police Justice Court records show for 1957-58 a total of 1,054 village ordinance violations resulting in fines and forfeitures of $18,484; for 1958-59 a total of 83 such violations with fines and forfeitures of $1,260; and for 1959-60 a total of 1,341 such violations producing fines and forfeitures of $21,525. Concededly, speeding ordinance violations made up the vast bulk of these village ordinance violations. The dearth of prosecuted violations in the 1958-59 fiscal year is attributed by the respondent, with some documentation, to national publieization of Waverly as a “ Speed Trap ”, allegedly resulting in a new Village Board and changed policies and practices in the enforcement of village traffic ordinances, but only for that particular fiscal period.
Not included in the above statistics but also disposed of in the Waverly Police Justice Court were 252 violations in 1957-58 of the State Penal Law and the State Vehicle and Traffic Law producing fines of $3,078; 156 such violations with fines totalling $1,429 in 1958-59; and 219 Penal Law and Vehicle and Traffic violations in 1959-60 resulting in fines of $2,110.
The official population of Waverly in 1950 was 6,037, and a conservative projection based on area growth indicates a present population of approximately 7,250. Tioga County has grown from a population of 30,166 in 1950 to a preliminary census population figure of 37,723 for 1960. Motor vehicle registrations in Tioga County increased from 13,032 for the entire year of 1957 to 15,571 in the first three months of 1959. It is thus a natural consequence that vehicle and traffic offenses of all classes, and the work load of general criminal matters normally occupying the District Attorney’s office in the past several *596 years have all shown a substantial and presumably permanent increase in volume with no clear indication of levelling off. The increased work load of the District Attorney’s office (a “ part-time ” one, as it is in many small counties) was recognized by an approximately 50% increase in the District Attorney’s salary in 1958 to $4,000 and by the addition of a part-time Assistant District Attorney in 1959 whose salary now is $2,100. The District Attorney points out that serious crimes and other time-consuming matters of major concern to his office occur and are unpredictable only as to the time of occurrence. Illustrative is the notorious Apalachin Convention of 1957, which occupied a substantial portion of the Tioga County District Attorney’s time for several months.
The Village Attorney of the Village of Waverly apparently also experienced a similar increase in village legal matters to the point where he reportedly does not have time to devote to the prosecution of violations of the village ordinances. However, the work load of the Village Attorney’s office is not made the basis of this application to require the District Attorney to • conduct prosecution of village ordinance violations.
This particular type of conflict between village officials and district attorneys basically is not new and has received astute but cynical recognition in People v. Wyner (207 Misc. 673, supra) at pages 676-677 where the court states: “ Local officials raise the question of whose duty it is to prosecute when they seek to be relieved of a function they performed in the past, but now find burdensome because of economic necessity due to progress, growth and increase in population ”. However, the Legislature has offered a solution in section 93 of the Village Law.
Since 1870 the Board of Trustees of a village has been empowered by statute to enforce obedience to its ordinances, the provisions being enacted as section 93 in 1927. In 1956 the Legislature recognized the problem of procuring prosecution of offenses against village ordinances by adding to section 93 provisions whereby the Village Attorney, if designated as an Assistant District Attorney, could prosecute all nature of criminal offenses committed within the village, and empowering village Boards of Trustees to pay a reasonable compensation for such services. The 1960 Legislature again turned its attention to the same problem and further amended section 93 to permit the village Boards of Trustees to retain and pay as a prosecutor an attorney other than the one regularly employed as Village Attorney, provided such attorney be designated an Assistant District Attorney. On approving this last amend *597 ment, the Governor stated that “ authority to employ an additional attorney is necessary because many local district attorneys * * * are overburdened with prosecution of village ordinances violations * * * (and) in other instances, because of the regular village attorney’s preoccupation with civil matters * * * he is unable to undertake the prosecution of persons charged with violations of ordinances or criminal offenses
The District Attorney has stated that he will co-operate to secure the designation as Assistant District Attorney of any attorney the Village Board desires to employ. The Mayor claims that “ it has been impossible ” to find an attorney in the Village of Waverly “ experienced in criminal prosecutions ” who would accept an appointment because he would be prohibited from acting as attorney for a defendant in any criminal case in any court of the State. (See N. Y. Const., art. VI, § 19.) This conclusory statement of impossibility of employment is not supported by any factual data. It is conceivable that an offer of adequate compensation might induce a competent local attorney to forego criminal defense work and undertake the task of prosecuting violations of the ordinances of the village. In any event, it is not claimed that such appointee must be, by law, a resident of the village.
On the oral argument, counsel for the Mayor implied that the cost of enforcing the ordinances of the village should be paid from fines and forfeitures resulting from violations of such ordinances and that for the village to hire a prosecutor might place a financial burden on innocent taxpayers. This “ pay as you go ” concept should not be the determining factor when enforcement of village ordinances is being considered. That which is beneficial to the whole community should be paid for, at least in part, by the community. Parenthetically, it may be pointed out that effective October 1, 1960, the Legislature will permit villages to retain $2 per capita of the money derived from fines, penalties and forfeitures resulting from violations of village ordinances instead of the $1 previously permitted. (L. 1960, ch. 578.)
As discussed previously, a District Attorney is under no absolute mandate to prosecute violations of village ordinances. In this case the District Attorney’s decision (which is the same as his predecessor’s) not to undertake the prosecution of violations of the ordinances of the Village of Waverly should not invoke judicial interference. The part-time status of the District Attorney and his one assistant; the amount of work performed by the District Attorney’s office in connection with *598 investigations and the prosecutions of violations of the State’s Penal Law and Vehicle and Traffic Law; the large number of violations of the ordinances of the Village of Waverly; and the solution afforded by section 93 of the Village Law amply justify the District Attorney’s decision.
The petition of the Mayor of the Village of Waverly should be dismissed upon the merits, without costs.