IN THE MATTER OF INVESTIGATION REGARDING RING-
WOOD FACT FINDING COMMITTEE RE VIOLATION OF
*N. J. S. A.* 19 :34–38.1.

Argued March 18, 1974—Decided August 8, 1974.

*Mr. Joseph D. J. Gourley,* Passaic County Prosecutor, argued the cause for the appellant pro se (*Mr. Gary Schlyen,* Assistant Passaic County Prosecutor, of counsel).

*Mr. Martin F. Murphy* argued the cause for the respondents citizens of Ringwood (*Messrs. Johnson, Johnson & Murphy,* attorneys).

*Mr. Alfred J. Luciani,* Deputy Attorney General, argued the cause for the State of New Jersey *Amicus Curiae* (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. David S. Baime,* Deputy Attorney General, of counsel and on the brief).

The opinion of the Court was delivered by

JACOBS, J. The Ringwood Fact Finding Committee circulated a pamphlet shortly before the November 3, 1970

Ringwood mayoral election. The pamphlet did not in terms refer to "any election or to any candidate or to the adoption or rejection of any public question" (*N. J. S. A.* 19: 34–38.1), but it did criticize a proposed solid waste disposal program which had the support of a candidate. The pamphlet did not bear the "name and address of the person or persons causing the same to be printed" (*N. J. S. A.* 19: 34–38.1), although the persons were publicly identified before the election. On December 9, 1970, Mr. Martin F. Murphy, an attorney at law, notified the Passaic County Prosecutor by letter that he represented Ringwood citizens who were complaining that the pamphlet violated the provisions of *N. J. S. A.* 19:34–38.1. He also notified the prosecutor that he was calling for investigation of the complaint pursuant to *N. J. S. A.* 19:34–62 and that he had been employed to assist in the investigation in accordance with *N. J. S. A.* 19:34–63.

The prosecutor duly conducted an investigation which included, *inter alia,* interviews by his representative with the members of the Ringwood Fact Finding Committee in the presence of Mr. Murphy and his associates. On the basis of the completed investigation, the prosecutor found in effect that the violation, if any, was unintentional and that there was no "reasonable ground for instituting a prosecution" (*N. J. S. A.* 19:34–62). In due course he served notice on Mr.. Murphy that he would move before the Assignment Judge of Passaic County "to dismiss the complaint filed herein alleging a violation of the New Jersey Statutes, to wit *N. J. S. A.* 19:34–38.1." The notice also set·forth that it was being sent pursuant to *N. J. S. A.* 19:34–63 and that objections could be filed in writing with the Court for its consideration.

After taking testimony and hearing argument, the Assignment Judge denied the motion to dismiss and directed "that the investigation regarding the Ringwood Fact Finding Committee and their violation of *N. J. S. A.* 19:34–38.1 be presented to the Passaic County Grand Jury within

a reasonable period of time. . . ." He further directed that Mr. Murphy "be present at the presentation of this matter to the Passaic County Grand Jury. . . ." On appeal, the Appellate Division affirmed the Law Division's denial of the motion to dismiss and its direction that the complaint be submitted to the grand jury; however, it struck the provision that Mr. Murphy attend at the presentation to the grand jury, finding no necessity for such attendance. *In re Ringwood Fact Finding Committee*, 124 *N. J. Super.* 310, 312 (*App. Div.* 1973). Mr. Murphy did not petition for certification with respect to the striking of the provision for his attendance before the grand jury. The prosecutor did petition for certification with respect to the denial of his motion to dismiss and the direction that the matter be submitted to the grand jury and his petition was granted. 64 *N. J.* 316 (1974). In his petition he advanced the following single contention: "The order of the Assignment Judge denying the Prosecutor's motion to dismiss the election law complaint and directing that the Prosecutor present the matter to the Grand Jury was without authority and violative of the separation of powers." While we do not subscribe to this contention we do find that on the particular showing before it, the Law Division should not have directed that the matter be presented to the grand jury but should have granted the prosecutor's motion to dismiss.

The 1930 Revision of our election laws contained special provisions relating to the prosecutor's duties when notified of election law violations (*L.* 1930, *c.* 187, *p.* 909); these provisions have been carried forth into sections 62 and 63 of Chapter 34, Title 19 of the current New Jersey Statutes (*N. J. S. A.* 19:34–62, 63). Section 62 provides that if the prosecutor is notified of a violation he shall inquire into the facts and "if there is reasonable ground for instituting a prosecution" he shall submit the matter to the grand jury. Section 63 provides that any citizen may employ an attorney who shall be recognized by the prosecutor and the court as associate counsel, and that no proceeding shall be

dismissed without notice to the associate counsel and "until the reasons of the prosecutor of the pleas for such dismissal, together with the objections thereto of such associate counsel, shall have been filed in writing, argued by counsel and considered by the court. . . ."

No one questions that section 63 gives explicit authority to the court to grant or deny the prosecutor's motion to dismiss the election law complaint; and the Appellate Division found that "[b]y necessary implication from such grant of authority, the Legislature obviously intended to, and did in fact, vest the court with the correlative power to require the presentation of the matter to the grand jury." *In re Ringwood Fact Finding Committee, supra,* 124 *N. J. Super.* at 312. We agree that such was the legislative intent, and that there was no intent whatever to place the court in the very unseemly and highly injudicial position of being called upon to express its judgment as to whether the circumstances dictate submission to the grand jury but being powerless to direct such submission.

As recognized in *State v. Laws,* 51 *N. J.* 494, 510–511, *cert.* denied, 393 *U. S.* 971, 89 S. Ct. 408, 21 *L. Ed.* 2d 384 (1968), the prosecutor has broad discretion in selecting matters for prosecution. While his discretion is broad, it "is not unregulated or absolute" (*State v. Winne,* 12 *N. J.* 152, 172 (1953)) and it may, in appropriate circumstances, be reviewed for arbitrariness or abuse. See *State v. LeVien,* 44 *N. J.* 323, 327 (1965); *cf. State v. Conyers,* 58 *N. J.* 123, 146–147 (1971); *State v. Ashby,* 43 *N. J.* 273, 276 (1964).* In our State, such review is readily available

---

*The contrary view, suggested in cases such as *United States v. Cox,* 342 *F.* 2d 167, 171 (5 *Cir.*), *cert.* denied *sub nom. Cox v. Hauberg,* 381 *U. S.* 935, 85 *S. Ct.* 1767, 14 L. *Ed.* 2d 700 (1965), has been devastatingly attacked by Kenneth Culp Davis in *Discretionary Justice, A Preliminary Inquiry* (1969) 188 *et seq.* In commenting (at 210) on the *Cox* case Professor Davis had this to say:

One main reason that seems to actuate federal courts in holding that discretion of prosecutors may not be reviewed to protect

within the extraordinarily comprehensive prerogative writ jurisdiction which New Jersey's judicial system inherited from the King's Bench and which the 1947 State Constitution preserves. See *Monks v. N. J. State Parole Board,* 58 *N. J.* 238, 248–249 (1971); *In re Senior Appeals Examiners,* 60 *N. J.* 356, 369–370 (1972); *cf. Mayflower Securities v. Bureau of Securities,* 64 *N. J.* 85, 93 (1973).

 In the matter at hand, we consider that the prosecutor did not act arbitrarily but acted conscientiously within his discretionary powers. The violation, if any, was technical and unintentional and the public interest would not have been served by pursuing it. If it were not for section 63 the prosecutor undoubtedly would have closed the matter administratively on the basis of the determination that there was no "reasonable ground for instituting a prosecution" within the contemplation of section 62. Because of section 63 he was obliged to submit the matter to the Law Division for its review but the Law Division should not have inter-

---

against abuse has been stated by the Fifth Circuit in a 1965 opinion: ". . . it is as an officer of the executive department that he [the U. S. Attorney exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." This reason is so clearly unsound as to be almost absurd. If separation of powers prevents review of discretion of executive officers, then more than a hundred Supreme Court decisions spread over a century and three-quarters will have to be found contrary to the Constitution! If courts could not interfere with abuse of discretion by executive officers, our fundamental institutions would be altogether different from what they are. If the statement just quoted from the Fifth Circuit were true, the courts would be powerless to interfere when executive officers, acting illegally, are about to execute an innocent person! See also *Davis, Administrative Law Text* (1972) § 28.06 at 523:

The conclusion seems overwhelming that courts should continue their gradual movement toward opening the judicial doors to review of prosecutors' discretion. The reasons for such review are stronger than for review of other administrative discretion that is now traditionally reviewable.

fered with the determination, absent a showing of arbitrariness or abuse. There was no such showing and the Law Division should therefore have granted the motion to dismiss. However, we hasten to reject any suggestion that if the totality of circumstances were such as to indicate a wilfully significant violation clearly calling for prosecution, the court would have been barred, by the doctrine of separation of powers or otherwise, from directing that the prosecutor submit the matter to the grand jury in regular course.

The history and nature of the prosecutor's office have been extensively described elsewhere and need only be referred to briefly. See *Morss v. Forbes*, 24 *N. J.* 341, 364 (1957); *State v. Longo*, 136 *N. J. L.* 589, 592 (*E. & A.* 1947). It is admittedly a constitutional office but it is not mentioned in the Executive Article of the 1947 Constitution (Art. V). In the 1844 Constitution (Art. VII) it is listed under "Civil Officers" along in the same paragraph with the attorney-general, clerk of the supreme court, clerk of the court of chancery, secretary of state and keeper of the state prison. In the 1947 Constitution (Art. VII) it appears under "Public Officers and Employees," along in separate paragraphs with the state auditor, county clerks, surrogates and sheriffs. The Constitution does not define the duties of the prosecutor's office and the Legislature has from time to time necessarily passed enactments dealing with the subject. *State v. Longo, supra*, 136 *N. J. L.* at 592: *Morss v. Forbes, supra*, 24 *N. J.* at 366–370. The constitutionality of these enactments has not been questioned and, most assuredly, limiting provisions with respect to the prosecutor's authority, such as those contained in *N. J. S. A.* 19:34–62, 63, are well within the law-making powers vested in the Legislature by Article III of the 1947 Constitution.

In *Morss*, a legislative investigating committee sought to obtain information from a county prosecutor with respect to the wiretapping activities of his office. He refused to respond to inquiries, contending that when he deemed it to be in the public intreest he had the right, under the consti-

tutional doctrine of separation of powers and as part of the executive, to decline to furnish information sought by the legislative branch of government. His contention was rejected by this Court in an opinion by Justice Wachenfeld, himself a former prosecutor, which noted that although there is still some confusion with respect to the exact status of the prosecutor, there is "little doubt but that the executive chain of command is not sufficiently prominent to enable the prosecutor to claim any high prerogative which might be enjoyed by the state executive with respect to withholding information from the Legislature." 24 *N. J.* at 372–373.

*Morss* also quoted from *Massett Bldg. Co. v. Bennett,* 4 *N. J.* 53 (1950), where Chief Justice Vanderbilt pointed out that the doctrine of separation of powers "has nowhere been construed as creating three mutually exclusive watertight compartments" and that blendings are permitted so long as there is no impairment of "the essential integrity of one of the great branches of government." 24 *N. J.* at 372. See 1 *Davis, Administrative Law Treatise* § 1.09 at 68 (1958): "The danger is not blended power. The danger is unchecked power." See also *David v. Vesta Co.,* 45 *N. J.* 301, 326 (1965): "The doctrine of separation of powers must therefore be viewed not as an end in itself, but as a general principle intended to be applied so as to maintain the balance between the three branches of government, preserve their respective independence and integrity, and prevent the concentration of *unchecked* power in the hands of any one branch."

Justice Wachenfeld found in *Morss* that the wiretapping investigation constituted no legislative impairment of the essential integrity of the executive (24 *N. J.* at 372) and surely there was no such legislative impairment in the enactment of *N. J. S. A.* 19:34–62, 63. By providing an explicit measure of judicial supervision to guard against "attempts at a 'whitewash' of the charges" (Artaserse, J. in *Ruvoldt v. Tumulty,* 107 *N. J. Super.* 545, 555 (*Law Div.*), aff'd, 107 *N. J. Super.* 494 (*App. Div.* 1969)), the Legislature

clearly advanced the public interest without in anywise impairing the integrity of the executive branch of government; nor did it in anywise impair the strength and independence of the prosecutor's office which has historically been subjected to supervisory judicial controls. Thus, for example, *R. 3:25–1* precludes the *nolle prosequi* or dismissal of an indictment by a prosecutor without prior motion and judicial approval. See *State v. Ashby, supra,* 43 *N. J.* at 276; *cf. R. 3:1–3; State v. Conyers, supra,* 58 *N. J.* at 146–147. See also *Davis, Discretionary Justice, A Preliminary Inquiry, supra* at 213; *Davis, Administrative Law Treatise* (1970 *Supp.*) § 28.16 at 989–990. It would indeed disserve our democratic processes if misconceptions with respect to the proper meaning and scope of the doctrine of separation of powers were to result in retrogressive restrictions on this and comparable judicial controls which are so well-designed towards curbing governmental improprieties and excesses.

The judgment entered in the Appellate Division, insofar as it sustained the Law Division's denial of the prosecutor's motion to dismiss and its direction that the matter be submitted to the grand jury, is hereby:

Reversed.

PASHMAN, J. (concurring and dissenting in part). I concur in the majority opinion but only in the result.

This appeal presents the Court with one question as to the interpretation of *N. J. S. A.* 19:34–62 and 19:34–63: whether the court can compel a prosecutor to present evidence to the grand jury as to violations of election laws. The factual occurrences giving rise to this issue should be briefly summarized as an aid in understanding my position.

Three days prior to the Borough of Ringwood mayoral election of November 3, 1970, the Ringwood Fact Finding Committee circulated a pamphlet critical of the proposed Ringwood Solid Waste Authority and the intention to construct and operate a solid waste disposal facility. The com-

mittee was composed of four citizens of the Borough of Ringwood. The pamphlet did not note the names and addresses of committee members, but stated only that it was sponsored by the Ringwood Fact Finding Committee. The absence of the "name[s] and address[es] of the person or persons causing the same to be printed" is an apparent violation of *N. J. S. A.* 19:34–38.1.[1]

Fourteen residents of the borough retained counsel and by letter of December 9, 1970, notified the Passaic County Prosecutor of the violations, pursuant to *N. J. S. A.* 19:34–62.[2] The prosecutor was also informed that counsel had been retained by complainants to assist in the investigation as provided for in *N. J. S. A.* 19:34–63.[3] A county detective

---

[1]*N. J. S. A.* 19:34–38.1

No person shall print, copy, publish, exhibit, distribute or pay for the printing, copying, publishing, exhibiting or distribution or cause to be distributed in any manner or by any means, any circular, handbill, card, pamphlet, statement, advertisement or other printed matter having reference to any election or to any candidate or to the adoption or rejection of any public question at any general, primary for the general, or special election unless such circular, handbill, card, pamphlet, statement, advertisement or other printed matter shall bear upon its face a statement of the name and address of the person or persons causing the same to be printed, copied or published or of the name and address of the person or persons by whom the cost of the printing, copying, or publishing thereof has been or is to be defrayed and of the name and address of the person or persons by whom the same is printed, copied or published.

[2]*N. J. S. A.* 19:34–62

If the prosecutor of the pleas of the county shall be notified of any violation of any of the provisions of this title, he shall forthwith diligently inquire into the facts, and if there is reasonable ground for instituting a prosecution, such prosecutor of the pleas shall present the charge, with all the evidence which he can procure, to the grand jury of the county. Nothing herein contained shall justify any such prosecutor in counties of the first class in exercising the powers conferred upon the superintendent of elections in such counties.

[3]*N. J. S. A.* 19:34–63

Any citizen may employ an attorney to assist the prosecutor of the pleas to perform his duties under this title, and such attorney shall

was assigned to investigate the matter. His report to the prosecutor indicated that the committee members did not have a party affiliation; that the pamphlet was paid for by equal contributions from the four members who were identified one day prior to the election, and that the pamphlet was devoid of any political candidate's name and was directed at informing the public as to the advisabilty of establishing the Ringwood Solid Waste Authority. No intent was found to violate the law.

Based on the investigation and report, the prosecutor filed a notice of motion to dismiss the complaint,[4] as provided for in *N. J. S. A.* 19:34–63. A hearing was conducted before the assignment judge. The statute, *N. J. S. A.* 19: 34–38.1, requires reference to a candidate or election. While no reference to any candidate was made, respondents contended that the pamphlet clearly dealt with an issue of the campaign of which the incumbent mayor and challenger were on opposing sides. This was not contested by the prosecutor who, however, maintained that there was no "reasonable ground for instituting a prosecution." *N. J. S. A.* 19: 34–62.

The trial court found that (1) the disposal of solid waste was a primary issue in the Ringwood mayoral campaign; (2) the pamphlet referred to an issue in the campaign; (3) the specific intent to violate the statute is immaterial, and (4) *N. J. S. A.* 19:34–62 and 19:34–63 impose a duty

be recognized by the prosecutor of the pleas and the court as associate counsel in the proceedings.

No prosecution, action or proceeding shall be dismissed without notice to, or against the objection of, such associate counsel until the reasons of the prosecutor of the pleas for such dismissal, together with the objections thereto of such associate counsel, shall have been filed in writing, argued by counsel and considered by the court, with such limitation as to the time of filing such reasons and objections as the court may impose.

[4]No formal complaint was filed. The "complaint" here is merely the letter of December 9, 1970, informing the prosecutor of the violation.

upon the prosecutor to present the matter to the grand jury. The judge denied the motion to dismiss and directed the prosecutor to present the matter to the grand jury, as well as ordering that respondents' private counsel be present before the grand jury in his capacity as associate counsel pursuant to *N. J. S. A.* 19:34–63. The prosecutor claimed the order usurped his power and refused to consent to its entry.

On appeal to the Appellate Division, the trial court's order was upheld insofar as it compelled the prosecutor to present the matter to the grand jury, but modified to the extent that it allowed the presence of private counsel at grand jury proceedings. *In re Ringwood Fact Finding Committee,* 124 *N. J. Super.* 310 (App. Div. 1973). Passaic County Prosecutor's petition for certification was granted on December 11, 1973. 64 *N. J.* 316 (1974).

## I

The Appellate Division noted that *N. J. S. A.* 19:34–63 lacked an express authorization for the court to order a prosecutor to submit the results of his investigation to the grand jury. The statute forbids the dismissal of an election complaint without notice to the complainant and until the prosecutor submits his reasons for dismissal to the court in writing, along with associate counsel's objections. The motion for dismissal is to be "argued by counsel and considered by the court." While this represents express authority to grant or deny the motion, I do not find, as do my colleagues and the Appellate Division, that this constituted, by necessary implication, a vesting of power within the court to require presentation to the grand jury.

The executive power is vested in the Governor. *N. J. Const.* (1947), Art. V, § 1 ¶ 1. Among the powers and duties of the Governor is that he "take care that the laws be faithfully executed." *N. J. Const.* (1947), Art. V, § 1, ¶ 11. Article V also provides for the appointment by the Governor, with the advice and consent of the Senate, of the

attorney general, who is to serve during the Governor's term of office. Art. V, § 4, ¶ 3. The county prosecutor, while appointed by the Governor, is to serve a five-year term as provided in Art. VII, § 2, ¶ 1, dealing with public officers and employees.

The Legislature does not have the authority to grant nor do the courts have any inherent authority to claim the power to compel the prosecutor, as an agent of the executive branch of government, to exercise a function which, in our Constitution, is assigned exclusively to the executive.

The election laws occupy a unique status in that their violation penetrates directly to the heart of the democratic process. Violation of election procedures serves as an affront to the very legitimacy of government. An examination of what little legislative history is available with respect to the enactment of *N. J. S. A.* 19:34–62 and 19:34–63 revealed nothing to aid the Court in ascertaining legislative intent. The importance of preserving the sanctity of election procedures, however, was undoubtedly one motivating factor in the rather unusual directive embodied in *N. J. S. A.* 19: 34–63. The prosecutor's discretion to act is not affected; yet, unlike other criminal violations, the prosecutor cannot dismiss alleged violations of the election laws before presenting the results of his investigation[5] to the court, along with his reasons for not seeking an indictment. This departure from the practice in other instances is necessary so as to preclude any one branch from successfully preventing the disclosure of circumstances attending alleged violations. Absent this disclosure to the judicial branch, enforcement of election laws would be left to those whose election or appointment may have been facilitated by contravention of the very laws which they are now entrusted to enforce.

---

[5] It has been held that the prosecutor is required to investigate all complaints of election law violations and present any evidence to the grand jury. *Theurer v. Borrone,* 81 *N. J. Super.* 188, 197 (Law Div. 1963).

The most extensive discussion to date involving the challenged statutes can be found in *Ruvoldt v. Tumulty*, 107 *N. J. Super.* 545 (Law Div.), aff'd, 107 *N. J. Super.* 494 (App. Div. 1969), which involved an action to enjoin a county prosecutor from investigating alleged election irregularities. The critical issue was one irrelevant to the discussion today.[6] What is important, however, is the intent of the statute. As noted by the court therein at 555 of 107 *N. J. Super.*: "* * * [T]he intent of the statute [is] to . . . guarantee a vigorous prosecution and prevent any attempts at a 'whitewash' of the charges." In order to prevent such a "whitewash," the prosecutor is required to bring the matter to the court's attention.

*Ruvoldt v. Tumulty, supra*, referred to supersession of the prosecutor pursuant to *N. J. S. A.* 52:17A–4(f), deleted by amendment *L.* 1970, *c.* 74, § 19. See *N. J. S. A.* 52:17B–106. While expressing doubts as to a litigant's right to demand that the assignment judge exercise his power to affect such supersession, the court noted the function of litigation in bringing the matter to the assignment judge's attention.

> * * * On the other hand, it seems that one appropriate way by which the assignment judge may be alerted to the possible advisability of requesting the Attorney General to supersede the county prosecutor is through the medium of litigation. * * * [107 *N. J. Super.* at 553].

As enacted by the Legislature and construed today by this Court, *N. J. S. A.* 19:34–62 and 19:34–63 provide for an enforcement mechanism to ensure the integrity of this State's election laws. By requiring public disclosure of reasons for nonprosecution, the Legislature has provided a mechanism

---

[6] *Ruvoldt v. Tumulty, supra*, involved the jurisdiction of the Superintendent of Elections in counties of the first class, as provided for in *N. J. S. A.* 19:34–62. The Borough of Ringwood is in Passaic County — a county of the second class.

for judicial or executive intervention as provided for in *N. J. S. A.* 52:17B–106 and 52:17B–107.[7]

This State has always recognized the prosecutor's primacy as a representative of the executive branch. "[T]he prosecutor is the foremost representative of the executive branch of government in the enforcement of the criminal law." *State v. Winne,* 12 *N. J.* 152, 171 (1953). The prosecutor and attorney general have exclusive jurisdiction over the prosecution of crimes. *N. J. S. A.* 2A:158–4. Historically, the prosecutor has been vested with broad discretionary powers. *State v. Laws,* 51 *N. J.* 494, 510–511, *cert.* denied 393 *U. S.* 971, 89 *S. Ct.* 408, 21 *L. Ed.* 2d 384 (1968). It is the decision of the prosecutor whether to institute criminal proceedings. *State v. Le Vien,* 44 *N. J.* 323, 326–327 (1965). He may prosecute under any of the alternative actions available within the factual situation. *State v. States,* 44 *N. J.* 285, 291–292 (1965). The prosecutor need not pursue the maximum charge sustainable under the facts. *In re Buehrer,* 50 *N. J.* 501, 521 (1967).

Respondent's interpretation of *N. J. S. A.* 19:34–62 and 19:34–63 provides for judicial encroachment on the prosecutor's discretion putting squarely in issue the separation of powers doctrine. The doctrine is specifically enunciated in *N. J. Const.* (1947), Art. III, ¶ 1:

The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

The relationship of the office of county prosecutor to the executive branch was rather extensively examined by this Court in *Morss v. Forbes,* 24 *N. J.* 341 (1957). The Court

---

[7]See discussion of Criminal Justice Act of 1970, *infra.* A justice of the former Supreme Court had the power to supersede the prosecutor and request the attorney general to assume his functions. *State v. Longo,* 136 *N. J. L.* 589 (E. & A. 1947).

therein ordered plaintiff prosecutor to disclose to defendant legislative committee the identities of persons who performed wiretapping activities for the prosecutor. After rejecting plaintiff's argument as to the unconstitutionality of *N. J. S. A.* 52:13–3, dealing with witnesses before legislative investigating committees, the Court addressed itself to the prosecutor's allegation that to compel him to disclose the information requested would violate the separation of powers doctrine. While recognizing that, practically, the Governor exercised a real authority over prosecutors if only through his power to supersede them in certain cases, the Court concluded that

\* \* \* the existence of this power of supercession does not bring the prosecutors so directly under the influence of the Governor that they automatically qualify as full-fledged members of the state executive branch. [24 *N. J.* at 371].

That the prosecutor could not claim any privilege to withhold information based on any immediate connection with the Governor or attorney general was conceded by the attorney general. The attorney general herein, as *amicus curiae,* vigorously defends the prosecutor's right to claim the prerogative of bringing matters before the grand jury. Also, unlike *Morss v. Forbes, supra,* the prosecutor is being compelled to exercise a purely executive function — to enforce the law — rather than one to which the Legislature has a correlative right. *Zicarelli v. New Jersey State Commission of Investigation,* 55 *N. J.* 249, 263 (1970), *aff'd* 406 *U. S.* 472, 92 *S. Ct.* 1670, 32 *L. Ed.* 2d 234 (1972) (all three branches have the power to investigate); *Eggers v. Kenny,* 15 *N. J.* 107, 114–115 (1954). The "essential integrity of one of the great branches of government" had not been impaired. *Morss v. Forbes, supra,* 24 *N. J.* at 372.

The Court in *Morss v. Forbes* acknowledged some confusion with regard to the status of prosecutors. It concluded, however, that the prosecutor was basically a local

official who could not lay claim to a separation of powers argument.

> The prosecutor is primarily a local official. There is no equality in stature or dignity with the Legislature. He cannot claim freedom from properly conducted legislative investigation on the ground that such will subvert the division of powers envisioned by our forefathers as an effective check upon the growth of despotism. *The doctrine of separation has little applicability where the competing governmental functions are on entirely different levels of government.* [24 *N. J.* at 373; emphasis supplied].

The legislative committee was not seen as seeking to usurp a power which properly belonged to another branch, but was exercising the Legislature's own power of investigation in pursuit of "wise and effective legislation." 24 *N. J.* at 373. See *Eggers v. Kenny, supra.* Justice Jacobs stated in concurrence that no "independent right is afforded to the prosecutor by the constitutional doctrine of separation of powers. . . ." 24 *N. J.* at 377–378. Neither the Governor nor the attorney general, as head of a principal department, had sought to exercise the privilege.[8]

In evaluating the relevancy of *Morss v. Forbes, supra,* to the question before us, we must consider not only the particular factual circumstances of that case, but also the rather substantial change in the relationship between the attorney general and county prosecutors brought about by recent legislation. The Criminal Justice Act of 1970, *N. J. S. A.* 52:17B–97 *et seq.,* consolidated many previous statutes dealing with the attorney general's and prosecutor's authority in an attempt to encourage more cooperation and coordination among law enforcement authorities in combating organized crime. *N. J. S. A.* 52:17B–98 and 52:17B–112. The enactment established a Division of Criminal Justice which

---

[8]Then Justice Weintraub, however, felt that the controversy put directly in issue the question as to "the *situs* of a power of government as between coordinate branches in the discharge of their respective functions . . . ." [24 *N. J.* at 385].

serves as an exclusive division for the conduct of the criminal business of the attorney general within the State Department of Law and Public Safety. *N. J. S. A.* 52:17B–101.

The attorney general is to assume the duties of the prosecutor where a county is without one or where such assistance is requested by the prosecutor. *N. J. S. A.* 52:17B–104 and 52:17B–105. More important is the attorney general's duty to consult with and advise prosecutors.

The Attorney General shall consult with and advise the several county prosecutors in matters relating to the duties of their office and shall maintain a general supervision over said county prosecutors with a view to obtaining effective and uniform enforcement of the criminal laws throughout the State. He may conduct periodic evaluations of each county prosecutor's office including audits of funds received and disbursed in the office of each county prosecutor. [*N. J. S. A.* 52:17B–103].

Supersedure of the county prosecutor by the attorney general is provided for in *N. J. S. A.* 52:17B–106. The Governor can require such supersession, while a grand jury, board of chosen freeholders, or an assignment judge may request the attorney general to conduct all or any of the prosecutor's functions. The attorney general is free to supersede the prosecutor whenever he feels the interests of the State will be furthered by his doing so.

a. Whenever in the opinion of the Attorney General the interests of the State will be furthered by so doing, the Attorney General may (1) supersede a county prosecutor in any investigation, criminal action or proceeding, (2) participate in any investigation, criminal action or proceeding, or (3) initiate any investigation, criminal action or proceeding. In such instances, the Attorney General may appear for the State in any court or tribunal for the purpose of conducting such investigations, criminal actions or proceedings as shall be necessary to promote and safeguard the public interests of the State and secure the enforcement of the laws of the State.

b. The Attorney General may in his discretion act for any county prosecutor in representing the interests of the State in any and all appeals and applications for post-conviction remedies. [*N. J. S. A.* 52:17B–107].

Each county prosecutor is required to submit an annual report to the attorney general, and may be requested to file reports as to any matter pertaining to his office. *N. J. S. A.* 52:17B–111(b). In addition, the Legislature amended *N. J. S. A.* 2A:158–4 to vest responsibility for prosecution of the State's criminal business in the attorney general as well as the county prosecutor.

The effect of the above enactments is to bring the county prosecutor more closely within the control and supervision of the executive branch through the attorney general, from whom the prosecutor's powers and authority were originally taken. *Morss v. Forbes, supra,* 24 *N. J.* at 364–368. The different context of the question raised in *Morss v. Forbes* as well as the altered relationship of county prosecutors to the executive branch renders inapplicable much of the discussion therein.

The prosecutor's discretion in enforcing the criminal laws has long been recognized. *Confiscation Cases,* 74 *U. S.* (7 Wall.) 454, 19 *L. Ed.* 196 (1869); *Newman v. United States,* 127 U. S. App. D. C. 263, 382 *F.* 2d 479, 481 (1967); *United States v. Cox,* 342 *F.* 2d 167, 171 (5 Cir.), *cert.* denied *sub nom. Cox v. Hauberg,* 381 *U. S.* 935, 85 *S. Ct.* 1767, 14 *L. Ed.* 2d 700 (1965). See A.B.A. Project on Standards for Criminal Justice, *The Prosecution Function and The Defense Function,* Commentary at 87 (Approved Draft 1971).

In upholding an indictment charging a county prosecutor with nonfeasance, this Court had occasion to comment on the prosecutor's duties in *State v. Winne, supra.* The nature of the discretion allowed the prosecutor was quoted from *State ex rel. McKittrick v. Wallach,* 353 *Mo.* 312, 182 *S. W.* 2d 313, 318–319 (Sup. Ct. 1944). Continuing, the Court noted that if, in fact, discretion is exercised, "inaction" is a perfectly proper course of "action."

\* \* \* The distinction between the exercise of discretion in good faith and a willful failure to act is to be judged by his conduct in the light of all the facts and circumstances. A county prosecutor

within the orbit of his discretion inevitably has various choices of action and even of inaction. *This discretion applies as much to the seeking of indictments from the grand jury* as it does to prosecuting or recommending a *nolle prosequi* after the indictment has been found, but he must at all times act in good faith and exercise all reasonable and lawful diligence in every phase of his work. [*State v. Winne, supra*, 12 *N. J.* at 174; emphasis supplied].

Discretion in enforcement differs from inaction and neglect. See Ferguson, "Formulation of Enforcement Policy: An Anatomy of The Prosecutor's Discretion Prior to Accusation," 11 *Rutgers L. Rev.* 507, 512, 514–516, 525. No prosecutor will be subject to legal action if he exercises in good faith the discretion granted him. *State v. Winne* makes this clear in its reference to the absence of any good faith exercise of judgment in the case before the Court therein.

Exercise of discretion implies some conscious judgment and decision. The discretion not to prosecute is a valid and frequent mode of action, limited only at the extreme when it rises to an abuse of public office sufficient to constitute misconduct. The prosecutor is not mandated to proceed in every possible instance.[9] There will be instances where guilt may be clear, but other circumstances reveal, in the prosecutor's judgment, that prosecution will not serve the ends of justice. See generally, Abrams, "Internal Policy: Guiding the Exercise of Prosecutorial Discretion," 19 *U. C. L. A. L. Rev.* 1, 43–49 (1971); Cole, "The Decision to Prosecute," 4 *Law and Soc. Rev.* 331 (1969–1970); La Fave, "The Prosecutor's Discretion in the United States," 18 *Am. J. Comp. L.* 532, 533–535 (1970); "Prosecutorial Discretion," 1 *Crim. Just. Quar.* 154 (1973).

More factors enter the prosecutor's decision than whether the technical requirements of an offense are present. *State v. Hampton,* 61 *N. J.* 250, 275 (1972). Circumstances of the act, expectations of the Legislature and considerations of fair play are all relevant to the prosecutor's decision.

---

[9]See *N. J. S. A.* 2A:158–5.

*State v. States,* 44 *N. J.* 285, 292 (1965). Other considerations include the character and history of the offender, nature of the offense, harm to the victim, as well as the nature of the locale. See Comment, "Prosecutorial Discretion In The Initiation Of Criminal Complaints," 42 *So. Calif. L. Rev.* 519, 521–536 (1968–1969); Kaplan, "The Prosecutorial Discretion — A Comment," 60 *Nw. L. Rev.* 174 (1965–1966); Miller, *Prosecution: The Decision to Charge a Suspect with a Crime, Chs.* 8–19 (1969). See generally, Annotation, "Duty and Discretion of District or Prosecuting Attorney as Regards Prosecution for Criminal Offenses," 155 *A. L. R.* 10.

The court cannot compel a prosecutor to bring a complaint. The remedy lies with the executive branch and, ultimately, with the people. *Milliken v. Stone,* 7 *F.* 2d 397 (S.D. N.Y. 1925), *aff'd,* 16 *F.* 2d 981 (2 Cir.), *cert.* denied, 274 *U. S.* 748, 47 *S. Ct.* 764, 71 *L. Ed.* 1331 (1927); *Pugach v. Klein,* 193 *F. Supp.* 630 (S.D. N.Y. 1961), *cert.* denied *sub nom. Pugach v. New York,* 374 *U. S.* 838, 83 *S. Ct.* 1890, 10 *L. Ed.* 2d 1059 (1963). A statute providing that officials are "authorized and required" to prosecute violators of the law was not held to justify compelling the government to institute proceedings against persons who have violated the Civil Rights Act. *Moses v. Kennedy,* 219 *F. Supp.* 762 (D. D.C. 1963), *aff'd sub nom. Moses v. Katzenbach,* 119 *U. S. App. D.C.* 352, 342 *F.* 2d 931 (1965).

The importance of the prosecutor's discretion in exercising an executive function has been recognized in many jurisdictions. An Ohio statute directing the court to conduct an investigation of complaints as to campaign practices was declared unconstitutional as contravening the separation of powers doctrine in *In re Metzenbaum,* 26 *Ohio Misc.* 47, 265 *N. E.* 2d 345 (Ct. Cm.Pl. 1970).

The executive power is defined as the power to execute the laws of the State. This includes the power and duty of Ohio's County Prosecutors to enforce the penal laws of the State by investigating and prosecuting persons accused of crime. The Attorney General is the

chief law officer of the State and assumes the powers of a Prosecuting Attorney in cases where the Governor and General Assembly so direct. (R. C. § 109.02) The judiciary may not encroach upon or usurp these functions. Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714; State of Louisiana ex rel. Elliott v. Jumel, 107 U. S. 711, 2 S. Ct. 128, 27 L. Ed. 448. [265 *N. E.* 2d at 346].

Courts will not compel the prosecutor to issue a warrant for arrest. *Hassan v. Magistrate's Court of City of New York,* 20 *Misc.* 2d 509, 191 *N. Y. S.* 2d 238, 241 (Sup. Ct. 1959), *appeal dismissed,* 8 *N. Y.* 2d 750, 201 *N. Y. S.* 2d 765, 168 N. E. 2d 102 (Ct. App.), *cert.* denied, 364 *U. S.* 844, 81 *S. Ct.* 86, 5 *L. Ed.* 2d 68 (1960). The court does not have the power to substitute its judgment for that of the prosecutor. See *People v. Florio,* 301 *N. Y.* 46, 92 *N. E.* 2d 881 (Ct. App. 1950), *overruled on other grounds,* 15 *N. Y.* 2d 159, 256 *N. Y. S.* 2d 793, 204 *N. E.* 2d 842 (Ct. App. 1965). Compare *Johnson v. Boldman,* 24 *Misc.* 2d 592, 203 *N. Y. S.* 2d 760 (Sup. Ct. 1960) with *Parker v. Kennedy,* 212 *F. Supp.* 594 (S.D. N.Y. 1963). See generally, *State v. District Court of 24th Judicial District,* 323 *P.* 2d 993 (Okl. Crim. Ct. App. 1958); *Ascherman v. Bales,* 273 *Cal. App.* 2d 707, 78 *Cal. Rptr.* 445 (Ct. App. 1969); *People ex rel. Leonard v. Papp,* 386 *Mich.* 672, 194 *N.W.* 2d 693 (Sup. Ct. 1972).

If the prosecutor faithfully decides upon nonaction as the proper treatment for a complaint in a particular case, the courts cannot compel him to act differently. To do so, may in fact cause him to act in violation of the statutory mandate to proceed only where "reasonable ground for instituting a prosecution" is present. See *State ex rel. Kurkierewicz v. Cannon,* 42 *Wis.* 2d 368, 166 *N.W.* 2d 255 (Sup. Ct. 1969), where the court recognized that the legislature may spell out some limits of the district attorney's discretion, but when discretion to order an inquest into death is based on "reason to believe" the death was caused by criminal conduct, the "reason" is the subjective judgment of the prosecutor. 166 *N.W.* 2d at 261, 263. See *Powell v. Katzen-*

*bach,* 123 U. S. App. D. C. 250, 359 *F.* 2d 234 (1965), *cert.* denied, 384 *U. S.* 906, 84 *S. Ct.* 1341, 16 *L. Ed.* 2d 359, reh. denied, 384 *U. S.* 967, 86 *S. Ct.* 1584, 16 *L. Ed.* 2d 679 (1966). Similarly, *N. J. S. A.* 19:34–62 directs the prosecutor to institute proceedings where he determines "reasonable ground" exists.

The doctrine of separation of powers has been relied upon, as a fundamental barrier against tyranny and despotism. *Mulhearn v. Federal Shipbuilding and Dry Dock Co.,* 2 *N. J.* 356, 362–363 (1949). While seeming exceptions exist,

* * * in general it may be said that no deviation from the constitutional provisions incorporating the doctrine of the separation of powers will be tolerated which impairs the essential integrity of one of the great branches of government. * * * [*Masset Building Co. v. Bennett,* 4 *N. J.* 53, 57 (1960)].

.

The doctrine is to be utilized to maintain a balance of power among the three branches of government, rather than to create three mutually exclusive domains. See *David v. Vesta Co.,* 45 *N. J.* 301, 323–326 (1965) ; *cf. Morss v. Forbes, supra.* "The danger is not blended power. The danger is unchecked power." 1 *Davis, Administrative Law,* § 1.09 at 68. The judicial branch must beware of encroaching on those prerogatives that are peculiarly within the scope of executive power. The Governor "occupies a branch of State government coordinate and equal to the legislative and judicial branches" and the judicial power does not extend to actions within the governor's authority. *Allan v. Durand,* 137 *N. J. L.* 30, 32 (Sup. Ct. 1948) (Prosecutor unsuccessfully challenged Governor's removing him from office of Superintendent of Elections and Commissioner of Registration in Hudson County). Cf. *Humphrey's Executor v. United States,* 295 *U. S.* 602, 55 S. Ct. 869, 79 *L. Ed.* 1611 (1935).

Respondent would have us read into *N. J. S. A.* 19:34–63 a legislative authorization of judicial encroachment on the executive. An encroachment upon the prosecutor's discre-

tion in enforcement will not be inferred from ambiguous language. Clear and unequivocal language is necessary. Express legislative intent is clearly wanting here. When given a choice between an unconstitutional interpretation or an equally valid constitutional meaning, where the statute is ambiguous, the constitutional meaning will prevail. *State v. Profaci*, 56 *N. J.* 346, 349 (1970); *In re Loch Arbour*, 25 *N. J.* 258, 264–265 (1957); *Morss v. Forbes, supra*, 24 *N. J.* at 355–356; *Adams Newark Theatre Co. v. City of Newark*, 22 *N. J.* 472, 478 (1956), *aff'd*, 354 *U. S.* 931, 77 *S. Ct.* 1395, 1 *L. Ed.* 2d 1533, reh. denied, 355 *U. S.* 851, 78 *S. Ct.* 8, 2 *L. Ed.* 2d 61 (1957); *Commercial Trust Co. v. Hudson County Tax Board*, 87 *N. J.. L.* 179, 183–184 (E. & A. 1914); 3 *Sutherland, Statutory Construction* (3d ed), § 5823.

The former Supreme Court held that it had no power to compel the exercise of any duty imposed on the executive by the constitution. *State v. Governor*, 25 *N. J. L.* 331, 349–350, 351 (Sup. Ct. 1856) (power of issuing commissions) noted:

* * * The constitution has divided the powers of government into distinct departments, and cautiously provided for their independent exercise. It has expressly forbidden any person belonging to, or constituting one of these departments, from exercising any of the powers properly belonging to either of the others, except as expressly provided in the constitution itself. It has vested in the governor all the executive powers of the government.

 * * *

While it is the acknowledged duty of courts of justice to exert all their appropriate powers for the redress of private wrongs, it is no less a duty sedulously to guard against any encroachment upon the right, or usurpation of the powers, of the co-ordinate departments of government. In the delicate and complicated machinery of our republican system, it is of the utmost importance that each department of the government should confine itself strictly within the limits prescribed by the constitution.

See *State v. Governor* at 349–354. The institution of proceedings before the grand jury is a duty of the prosecutor

with which neither the Legislature nor the courts can constitutionally interfere.

The authority of the court to request supersedure of the prosecutor or, alternatively, to bring the matter before the grand jury of its own accord, renders the majority's fear of "retrogressive restriction" unfounded. The question is not whether a matter will be hidden from the grand jury's eyes, but rather how it will reach the grand jury.

The prosecutor, as an agent of the executive, is ultimately responsible to the public. Ferguson, *supra,* 11 *Rutgers L. Rev.* at 509. If no action is taken pursuant to *N. J. S. A.* 52:17B–106 or 52:17B–107 subsequent to the presentation of reasons for nonprosecution, the usurpation of executive function is not a remedy. Public reaction is one of the many factors which enters the discretionary judgment of the prosecutor, and it may work to cause a change of opinion as to prosecution. A new prosecutor may feel differently and open a new investigation. In any event, the court's concern for the conduct of all aspects of the "judicial powers" will not justify the encroachment upon an inherently executive function. The line must be drawn somewhere.

It is agreed on all sides, that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. It is equally evident, that neither of them ought to possess, directly or indirectly, an overruling influence over the others in the administration of their respective powers. It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it. After discriminating, therefore, in theory, the several classes of power as they may in their nature be Legislative, Executive, or Judiciary, the next and most difficult task is to provide some practical security for each, against the invasion of the others. What this security ought to be, is the great problem to be solved.

 ✻ ✻ ✻

The conclusion which I am warranted in drawing from these observations is, that a mere demarcation on parchment of the constitutional limits of the several departments is not a sufficient guard against those encroachments which lead to a tyrannical concentration of all the powers of Government in the same hands. [*The Federalist* (Univ. Ed. 1897), No. 47 at 343, 348].

Merely recognizing the theoretical existence of the tripartite form of government is no guarantee of implementing the checks upon governmental power for which it was adopted. When actions by one branch overstep the bounds necessary to preserve the integrity of others, the line must be drawn. So it must be here.

## II

The Appellate Division modified the trial court's order to the extent that it permitted private counsel to appear before the grand jury absent a request by the prosecutor. Although the modification is not before this Court, I feel that this disposition requires further elaboration. Associate counsel appointed pursuant to *N. J. S. A.* 19:34–63 "should not be permitted to be in attendance during the presentation of the case to the grand jury" and under no circumstances may he be present during its deliberations. *In re Ringwood Fact Finding Committee, supra,* 124 *N. J. Super.* at 312. This does not affect the prosecutor's ability to call associate counsel as a witness. 1951-1952 *Minn. Att'y. Gen. Rep.* Opin. No. 29 at 69. But see *Ruvoldt v. Tumulty, supra,* 107 *N. J. Super.* at 555–556, sounding a cautionary note as to the appointment of associate counsel whose interests may be in conflict with the intended prosecution.

No provision is made for such associate counsel in *R.* 3:6–6(a). While the Legislature has provided for both temporary and assistant prosecutors invested with authority to appear before the grand jury, *N. J. S. A.* 2A:158–9 and 2A:158–18, no similar grant of authority is present as to associate counsel appointed pursuant to *N. J. S. A.* 19:34–63.[10]

---

[10]*N. J. S. A.* 2A:158–9 vests a temporary prosecutor with "the powers of a prosecutor." See *N. J. S. A.* 2A:158–5 and *N. J. S. A.* 52:17B–101, 52:17B–102. *N. J. S. A.* 2A:158–18 grants assistant prosecutors the right to "attend the sessions of the grand jury."

The only authority cited by complainant, Opin. No. 29, *supra,* noted that the presence of "any attorney other than the county attorney" at a grand jury proceeding similar to that envisioned by *N. J. S. A.* 19:34–62 would work to invalidate subsequent indictments. Complainant would have us allow associate counsel to be present at grand jury proceedings because *N. J. S. A.* 19:34–63 provides for counsel to "assist the prosecutor . . . to perform his duties. . . ." As noted by the Minnesota Attorney General's opinion, the purpose of that state's similar act

> \* \* \* is obviously not for the purpose of displacing a county at-torney, but to render assistance to him in the performance of his duties and to afford to the associate counsel opportunity to be heard before dismissal of prosecution \* \* \*.[Opin. No. 29, *supra* at 71].

See generally, Annotation, "Presence in Grand Jury Room of Person Other Than Grand Jurors as Affecting Indictment," 4 *A. L. R.* 2d 392, 402–403.

In accordance with the views expressed herein, I concur in the reversal, in part, of the judgment entered in the Appellate Division.

I am authorized to state that Chief Justice HUGHES and Justice MOUNTAIN concur in this opinion.

HUGHES, C. J., and MOUNTAIN and PASHMAN, JJ., concur in result.

*For reversal*—Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7:

*For affirmance*—None.