588 A.2d 393
STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
WILLIAM MULLER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 6, 1991—Decided March 8, 1991.

Before Judges SHEBELL, HAVEY and SKILLMAN.

*Wilfredo Caraballo*, Public Defender, attorney for appellant (*Susan McCoy*, Assistant Deputy Public Defender, on the letter brief).

Respondent did not file a brief.

The opinion of the court was delivered by

SHEBELL, J.A.D.

Defendant, William Muller, appeals from a May 30, 1990 order of the Law Division purporting to reject defendant's guilty plea to Passaic County Indictment No. 88–10–1768–1 which charged defendant with second degree manslaughter (*N.J.S.A.* 2C:11–4b(1)). The order directs

that the Passaic County Prosecutor's Office re-present this matter to the Grand Jury and that the Passaic County Prosecutor's Office include in the re-presentation all evidence of previous acts of violence and hostility between the defendant and the victim which would be relevant to the defendant's state of mind at the time of the killing of the victim.

Defendant's September 6, 1989 guilty plea was a retraxit plea pursuant to a plea bargain wherein the State's only agreement was that it would not speak at sentencing and would not seek a period of parole ineligibility. At the conclusion of the plea hearing, the Law Division judge stated:

> I'm satisfied the defendant's offer to plead is voluntary in all respects. I'm further satisfied he fully understands the nature and consequences of the plea and I am satisfied that there is a factual basis according to his recitation of the facts.
>
> Therefore, I'll accept the plea subject to the presentence report and presentence investigation and I'll set down October 13th for sentence.

On October 13, 1989, defendant appeared for sentencing; at that time, the court adjourned the matter for one week after receiving letters from the decedent's friends and family which he felt should be made available to both counsel. Apparently, however, the next proceeding in open court was not held until May 4, 1990, at which time the judge indicated that he was "not pleased with the indictment" and that defendant "should have been indicted possibly for a homicide [murder] or aggravated manslaughter where he would have had a much greater exposure." The court discussed the case on the record with the prosecutor, but concluded, "I'm still dissatisfied with this indictment. It should have been an aggravated manslaughter or a homicide [murder]."

It appears that between October 13, 1989 and May 4, 1990 the judge had contacted the prosecutor and requested that an investigation take place to see if the prosecutor could substantiate the allegations contained in letters which indicated that the defendant had acted violently towards his wife, the homicide victim, prior to the date of her death by strangulation. The judge explained:

> I ordered the prosecutor to reinvestigate these letters because I received them after the plea. I was not privy to this before.
>
> And when I received them, I wanted it investigated because I wasn't going to go along with a ten year sentence when this man should be facing a thirty year sentence for aggravated manslaughter.

Further, the court in addressing those in attendance stated:

> I want you people to know I'm very unhappy about this case.

If I had some proof, he wouldn't get away with this.

The court then adjourned the proceeding and directed that the guardian of the decedent's children speak with the prosecutor and arrange to have the eleven year old son of the couple interviewed.

On May 22, 1990, the court reconvened the matter after receiving a report from the prosecutor's investigator and reviewing the Grand Jury minutes of the proceeding which resulted in the manslaughter indictment. The judge asserted that the Grand Jury was not advised of defendant's alleged acts of violence perpetrated against the decedent while the couple was living together. The court further stated:

> Then I consulted with the Prosecutor about it and he told me that he would have Detective Pegg investigate these letters, at least discuss with the authors of the letters the contents and whether there would be any meaningful proofs to substantiate these allegations.
>
> Detective Pegg has done that and unfortunately he hasn't received the cooperation that I expected that he would receive when I considered the letters that were written. Despite that, I'm of the opinion that this matter should be re-presented to the Grand Jury.
>
> I think the people who wrote letters, the relatives who have complained about the low sentence or the minimal sentence should be brought before the Grand Jury and they should be given the opportunity to present to the Grand Jury whatever information they have, whether it be through hearsay or personal knowledge.
>
> If the Grand Jury sees fit not to increase the charges then we'll proceed with the charge that had been returned. I don't feel comfortable about this case in sentencing this defendant to a ten year sentence. I feel that he should be exposed to a greater sentence. I don't have control over it. The only control I have is I could mandate that it be sent back to the Grand Jury.

Defense counsel, believing that the Prosecutor's Office had already made the decision not to re-indict, inquired whether the Prosecutor's Office had taken further action. The court responded, "I am overruling the Prosecutor's Office." The judge stated that he was relying upon *In re Investigation Regarding Ringwood Fact Finding Comm'n*, 65 *N.J.* 512, 324 *A.*2d 1 (1974), as authority for his determination that "the Court has a right to oversee a prosecutorial decision [a]nd ... the ability to review for arbitrariness and abuse...."

The representative of the Prosecutor's Office at the May 22, 1990 proceeding did not object to the court's refusal to proceed with sentencing based upon defendant's plea to the indictment or to the order that the case be re-presented to a Grand Jury. The State has not participated in this appeal, nor has it to this court's knowledge presented any further evidence to a Grand Jury. . . .

In its appeal from the order of the Law Division, the defendant argues:

POINT I: IN ORDERING THE STATE TO RE-PRESENT THE MATTER TO THE GRAND JURY, THE COURT OVERSTEPPED THE DOCTRINE OF SEPARATION OF POWERS BY SUBSTITUTING ITS JUDGMENT OF THAT OF THE PROSECUTOR.

POINT II: THE CASE SHOULD NOT BE RE-PRESENTED TO THE GRAND JURY SINCE THERE IS NO NEW EVIDENCE TO JUSTIFY RE-PRESENTATION.

Both the majority and concurring opinions in *Ringwood* recognized that the prosecutor has broad discretion in selecting matters for prosecution. 65 *N.J.* at 516, 530–31, 324 *A.*2d 1. The majority concluded that, in appropriate circumstances, the prosecutor's discretion may be reviewed for arbitrariness or abuse. *Id.* at 516, 324 *A.*2d 1.

It is clear that "inaction" may constitute a valid exercise of the discretion allowed to the prosecutor. *State v. Winne,* 12 *N.J.* 152, 174, 96 *A.*2d 63 (1953). The record of the proceedings before the Law Division fails to support the requisite conclusion for judicial intervention, namely, that the prosecutor acted arbitrarily or abused his discretion in deciding not to re-present the case against defendant to a Grand Jury after investigating the allegations of earlier violent acts. *Ringwood,* 65 *N.J.* at 516–18, 324 *A.*2d 1. These allegations and certain contradictions in the defendant's statement were evaluated by the prosecutor, who apparently determined that evidence necessary for re-presentation to the Grand Jury was either insufficient, unavailable, or untrustworthy. Further, the prosecutor no doubt considered the emotional impact of further proceedings, investi-

gation, and testimony upon the family of the decedent. Thus, the prosecutor determined that further action would not serve the ends of justice.

We are unable to conclude that the available facts were sufficient to permit a judicial mandate that the prosecutor present additional evidence to the Grand Jury. As noted by Justice Pashman, in his concurring opinion in *Ringwood*, "[d]iscretion in enforcement differs from inaction and neglect." 65 *N.J.* at 531, 324 *A.*2d 1. Only in those extreme circumstances in which the facts compel the conclusion that the prosecutor's failure to proceed is clearly arbitrary or constitutes an abuse of his office is there sufficient basis for the court to intervene.[1]

The May 30, 1990 order of the Law Division is reversed. The matter is remanded for further proceedings.

---

[1] It may be that even in such extreme circumstances, a conflict between the views of a judge and the local prosecutor is better resolved by bringing the suspected shortcomings of a local prosecutor's performance to the attention of the Office of the New Jersey Attorney General, rather than ordering a prosecutor to act. *See N.J.S.A.* 52:17B–103.